In the Matter of the Claim of ANNA PISKO, Respondent, against DAVID N. MINTZ et al., Appellants.

THE STATE INDUSTRIAL BOARD, Respondent.

(Submitted May 23, 1933; decided June 6, 1933.)

*H. Dudley Bierun* for appellants.

*John J. Bennett, Jr., Attorney-General (Roy Wiedersum* of counsel), for State Industrial Board, respondent.

CRANE, J.   Michael Pisko and his wife, Anna, were janitors or superintendents of an apartment house at 536 East Fifth street, New York city.   In addition to cash wages paid by the employer to this couple, they were allowed an apartment on the first floor of the building.   On January 1, 1931, at about five o'clock in the morning, a fire broke out in the apartment occupied by these people in which the husband, Michael Pisko, lost

his life through suffocation. At the time the wife and the children were upstairs in another apartment out of danger. The only person in the apartment at the time of the fire was the janitor himself, and he was found partially clothed near a window. The fire originated in the bed, and the mattress was burning at the time the firemen arrived. The fire captain testified that the only thing burning was the mattress, the bedding and the paint on the walls. The deceased was burned on one foot. All the evidence is positive upon this point that the fire in the janitor's apartment originated in the bed, that the mattress was on fire when the firemen arrived.

What happened will probably never be known except as we are permitted to infer it from this evidence, but from what we do know are we permitted to hold the owner and his insurance carrier liable under the Workmen's Compensation Law (Cons. Laws, ch. 67) on the ground that the death of Pisko arose out of and in the course of his employment? We recognized in *Matter of Giliotti* v. *Hoffman Catering Co.* (246 N. Y. 279) and *Matter of Underhill* v. *Keener* (258 N. Y. 543) that some workmen are obliged through the nature of their employment to remain upon premises or in buildings all of the twenty-four hours of the day. Giliotti was a cook and was suffocated to death by a fire which occurred in the hotel where he had sleeping accommodations. He was in his room on the night of the fire. We held that the destruction of the building by fire was a risk arising out of and in the course of his employment the same as if the building had collapsed while he slept. The cook's presence at all times was required by the nature of his work and the risk was one incurred from being in the *particular* building or hotel where he was paid to be. Giliotti had nothing to do with the fire which originated outside of his own quarters.

Everything, however, which happens to an employee occupying rooms in a building, the rental of which he receives as part of his compensation, is not attributable

to the dangers or risks of his employment. If in this case Pisko had been injured by a falling ceiling or a beam, the collapse of the building or a fire originating outside of his apartment, the risk would have been one connected with the place he was bound to occupy under the terms of his employment. Injuries received under such circumstances would have arisen out of and in the course of his employment. On the other hand, we may take the extreme case by way of illustration of a cut received by the employee while shaving himself, or the slipping in a bath tub while taking a bath, or the pulling over upon himself of a piece of furniture while attempting to move it, or burning himself while cooking his meals; all these and like occurrences would arise out of no risk of the employment and would not be occasioned because the employee was obliged to stay upon the premises or in a particular room or apartment. They would be such personal acts, disassociated from his employment, as would be likely to occur anywhere and in any place that the employee happened to live. The distinction is drawn in the *Giliotti* case.

We approach the application of this distinction, the difficulty arising as in so many cases over the application of a principle to the facts of the case. The difficulty lies in drawing the line between that which is a risk growing out of the employment and that which is solely personal to the employee. Pisko was in his apartment alone from about midnight to five o'clock in the morning. He evidently was lying on the bed as one foot was burned. The fire originated in the bed and mattress. These facts are not disputed. The danger was in no way connected with the particular apartment or place that Pisko was. obliged to occupy under the terms of his employment. The fire was not occasioned by reason of the place or any danger surrounding the apartment. Something ignited the bedding but there is no claim and no proof that the nature or condition of the apartment had any-

thing to do with causing the fire. The only reasonable inference to be drawn is that Pisko, the only person present, through some act of carelessness or negligence of his own not connected with or arising out of his employment, set fire to his bedding, an act for which the employer would not be liable under the Workmen's Compensation Law. There is a clear distinction between these facts and the case where an employee while asleep in his room is burned up because of a fire originating outside of his apartment which renders the place he is compelled to occupy unsafe and dangerous. The risk is at once connected with the place of his employment. When the place is rendered dangerous by some act or condition due to his occupancy and not due to the place itself, the injury or death does not come within the intent or purpose of the law. (*Matter of Davidson* v. *Pansy Waist Co.*, 240 N. Y. 584.)

Our conclusion is reached solely upon these uncontradicted facts without considering the testimony of the assistant fire marshal that Mrs. Pisko told him that night that she thought her husband while smoking must have dropped a cigarette down on the bed and set fire to it. This was a mere surmise on her part. She did state to the patrolman, however, that at two o'clock that morning. her husband, who had been drinking, forced her from the apartment to a neighbor's where she stayed until after the fire. This strengthens the only reasonable presumption which can be drawn from the conceded facts which is that the fire originated through some act of Pisko.

At about eight o'clock the night of December thirty-first there had been a fire in the cellar underneath this apartment occupied by the janitors, but as the evidence shows conclusively that this had nothing to do with the fire occasioned in the bed at five o'clock the next morning, it is not necessary to discuss the matter other than to say that we have not overlooked the evidence in connection therewith.

For the reasons here stated, the order of the Appellate Division should be reversed and the claim dismissed, with costs against the State Industrial Board in this court and in the Appellate Division.

POUND, Ch. J., LEHMAN, KELLOGG, O'BRIEN and CROUCH, JJ., concur; HUBBS, J., not sitting.

Order reversed, etc.