## Meem-Haskins Coal Corporation v. Bach et al.

May 9, 1939.

CRAFT & STANFILL for appellant.
ROY HELM for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Reversing.

The appeal is from a judgment confirming a compensation award to Sam Bach, an employee of the appellant, Meem-Haskins Coal Corporation.

Bach was a helper in the operation of a coal cutting machine. He went into the mines to work about five o'clock in the afternoon of October 30, 1936, and came out about half past two the next morning, having finished his task and been at work for nine hours. He and his buddy, Lee, went in the "sand house" where the night boss was lying down by the sand stove. The night was chilly. Two other men were asleep there. Lee

went home but, according to Bach, the night boss said: "Lay down here with me, Sam; I might need you before daylight anyway." He did so, but, getting chilly and seeing a fire in the blacksmith shop, about a hundred yards away, suggested that he would go down there by the fire. The boss said all right. He testified the boss had asked him on an average of once or twice a week during the three months he had been at work to stay after his shift that he might be available should another man get sick, or be hurt, or call for help. During the time he had slept in the sand house or the blacksmith shop. The forge consisted of a concrete platform two and one-half feet high and five feet square, with a grate or basket twelve or fifteen inches in diameter in the center for the coals. Bach laid down on this platform, "just kind of wrapped around the fire; kind of crooked; had to the way they were built; they are not long enough hardly and you wrap up around the fire." Bach's clothing was oily and he had less than a two foot ledge right up against the fire on which to lay. He dropped off to sleep and a live coal rolled down and set his clothing afire, and caused serious personal burns. This is the claimants' evidence in its most favorable aspect.

As we appraise the entire record, the preponderating and weight of evidence is that there was no custom to keep Bach or any of the other men on duty after they had come out of the mine, except they had been specifically notified before they came off duty; and though there had been some violations of the rule prohibiting the men sleeping in the shop, they were not such as to constitute a waiver of the rule by the employer. On this occasion, it seems to us, the better evidence is that Bach was waiting in the shop at his own convenience until breakfast at his boarding house was ready. Were we reviewing the verdict of a jury, the judgment would be reversed on the ground that it was flagrantly against the evidence. But by the terms of Section 4935, Kentucky Statutes, unless there is an entire absence of substantial and credible evidence to support the finding of fact by the Workmen's Compensation Board, the courts, in the absence of fraud, must accept it and determine the law of the case to be applied to the facts so found. Employers' Liability Assurance Corporation v. Gardner, 204 Ky. 216, 263 S. W. 743. Therefore, our consideration must be of the law as it relates to the fact that when he

was injured Bach was on the premises at a customary place, at the employer's request, waiting assignment of work, though without being paid any wage. The question is: Was his injury the result of an "accident arising out of and in the course of his employment" and not involving "wilful misconduct" on his part? Sections 4880, 4882, Statutes.

In the early development of this remedial social legislation, the Massachusetts court gave a construction or definition of this condition under which an employer is liable for compensation for injuries to or death of an employee which has been generally accepted by the courts of the country. In re McNicol, 215 Mass. 497, 102 N. E. 697, L. R. A. 1916A, 306. In the first case submitted to this court involving the present Workmen's Compensation Act, Kentucky Statutes, Section 4880 et seq., we adopted that construction of the phrase "accident arising out of" the employment to be, "When there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury." Elaborating it is said that: " 'if the injury can be seen to have followed as a natural incident of the work, and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises "out of the employment.' " Phil Hollenbach Company v. Hollenbach, 181 Ky. 262, 204 S. W. 152, 13 A. L. R. 524. Difficulty is often encountered in making application of the principle or determining whether the facts of a particular case bring it within that definition. In pursuing the application of the Act, liberally construed in favor of the employee, the courts have often brought within its coverage cases which seem illogical but perhaps appropriate through experience. Sometimes this favorable consideration may have led the courts away from the test of causal connection between the natural or inherent hazard of the job and the accident, or, as otherwise stated, from a reasonable conception that the event had its origin in the risk and flowed from that source as a rational consequence. The so-called "horse play" cases are quite illustrative. The events and injuries—as in the Hollenbach case—are held to be within the Act because of the innocence of the victims upon which the pranks of their fellows operated during the

course of their service. The events and injuries are not within the act if the injured employee was himself engaged in the play. It is the employee's own deliberate act that makes the distinction. So, too, are the night watchman cases. If the watchman fell asleep and by reason thereof suffered injury by his own act, he broke the chain of causal connection. There is a break in his employment. The employee's act, whether it be regarded as negligent or not, had no connection with his employment. There is no causal relation of the accident to a natural or inherent hazard of the job. It did not flow from an incident of the work. In these comparisons or illustrations the factor is not negligence, for it is fundamental in the administration of the Workmen's Compensation Act that negligence of the employee, though it may have caused his injury, does not bar recovery of compensation.

Closer to the case in hand is the case of Vincennes Bridge Company v. Industrial Commission, 351 Ill. 444, 184 N. E. 603, 605. There, Hoffman, a laborer engaged in bridge construction, during suspension of work at the noon hour, instead of going to the shelter and place provided for the men to eat their lunches, or to one of several other available places, climbed up on a hoisting engine which had a cover over and around it. It was a cool, rainy day and Hoffman went there to get dry and warm. In some way the engine started and the man caught his foot in the fly wheel. During this interval though he was under the protection of the Workmen's Compensation Act, even as we must regard appellee Bach during his period of waiting to be called back to work. Hoffman had nothing to do with the engine and had climbed on it for his own purpose and not to perform any duty of his employment or to do anything incidental to it. Bach had nothing to do with the forge or fire and had wrapped himself around it on a narrow ledge for his own purpose solely and not in performing the duty of his employment or doing anything incidental to it. The Illinois Court, after quoting from In re McNicol, supra, the generally accepted construction of the Workmen's Compensation Act, to which we have referred, said:

"Where an employee chooses to go to a dangerous place where his employment does not carry him, and thereby incurs a danger of his own choosing altogether outside of any reasonable requirement of

his employment, such risk is not an incident to the employment. The employee may not unnecessarily increase the risk of injury beyond that contemplated in his contract of service, or choose an unnecessarily dangerous place or manner for the performance of his service, and there must be a proximately causative relation between the nature of his work and the injury, so that it may be sure that the injury had its origin in a risk connected with the employment, from which the injury, though unforeseen, may after the event be recognized to have flowed as a rational consequence. &ast; &ast; &ast;

"In climbing about the engine, Hoffman unnecessarily placed himself in a dangerous position, as was demonstrated by the injury he received. He was doing nothing which he was directed or employed to do. His negligence was not merely contributory negligence in the performance of his work, but was an unnecessary exposure to danger entirely aside from the work he was employed to do. The award of the commission was manifestly against the evidence, and the court erred in not setting it aside."

In Pisko v. Mintz, 262 N. Y. 176, 186 N. E. 434, as a part of his compensation, a janitor of an apartment house occupied an apartment with his wife. Early one morning a fire broke out in that apartment, originating in Pisko's bed, and he was suffocated. Distinguishing his case from Matter of Giliotti v. Hoffman Catering Company, 246 N. Y. 279, 157 N. E. 621, 56 A. L. R. 500, where a cook at a hotel occupied an apartment and was suffocated to death in his apartment by a fire which originated elsewhere, the court held that Pisko's employer was not liable for compensation. The reasoning was as follows [262 N. Y. 176, 186 N. E. 436]:

"There is a clear distinction between these facts and the case where an employee while asleep in his room is burned up because of a fire originating outside of his apartment which renders the place he is compelled to occupy unsafe and dangerous. The risk is at once connected with the place of his employment. When the place is rendered dangerous by some act or condition due to his occupancy and not due to the place itself, the injury or death does not come within the intent or purpose of the law."

In Pacific Fruit Express Company v. Industrial Commission, 32 Ariz. 299, 258 P. 253, 55 A. L. R. 975, a man employed to gather up and remove waste paper and refuse from a railroad yard sat down under or between cars to rest from his labors and to engage with his co-workers in conversation. He was killed when a sudden movement of the cars caused him to fall upon the track. Recognizing that the deceased's negligence could not defeat the claim for compensation if at the time he was engaged in the performance of the work he was employed to do, or in work incidental to his employment, and that the accident occurred within the period of the employment, and drawing a distinction between that and a case where an employee who at intervals has rest periods or periods in which he must wait some happening or occurrence before he can proceed with his task, the court held the death was not compensable. This was because he was at the time performing no duty of his employment, nor was he at the place his duties required him to be, nor could his death be traced to the nature of his employment, nor to the risk to which his employer's business exposed him. He had ceased to do the work for which he was hired and had placed himself in a dangerous situation for his own convenience and pleasure.

Appellee relies upon National Biscuit Company v. Roth, 83 Ind. App. 21, 146 N. E. 410; Northwestern Iron Company v. Industrial Commission, 160 Wis. 633, 152 N. W. 416, and Richards v. Indianapolis Abattoir Company, 92 Conn. 274, 102 A. 604, 605. The last case is more nearly in point. The distinction between it and the others and the case at bar is apparent from the following quotation from that case:

"The controlling question here presented is whether Richards, the plaintiff, when injured, was actually doing his work he was employed to do, or whether he was doing something substantially different. He was injured while on duty, in his working hours, when waiting for an opportunity to continue his service of employment. The accident occurred when the plaintiff was at a place where he might reasonably be. There was no turning aside upon his part, no attempt to serve ends of his own."

Like those cases is Allen v. Columbus Mining Company, 207 Ky. 183, 268 S. W. 1073, 1074. Allen was employed as night operator of what was called the "sub-

station" of a mine plant to look after an electricity generator, his duties being to start and stop the machine and to replace the breaker whenever it fell out of its place as its sometimes did. During the night he had gone to the shop nearby to warm at a forge. He was expected to do that when the weather was cold and to build a fire in the stove. On this occasion he laid down within ten inches of the fire. His clothing became ignited and he was burned to death. Though he was guilty of negligence, he was not guilty of wilful misconduct within the terms of the statute. Compensation was allowed for the reason that it appeared the employee was not asleep and could have gone to the generator building and performed his active duties there had occasion arisen. It was observed in the course of the opinion:

> "If, however, as is indicated by some of the evidence, decedent was asleep at the time, it would be clear that he had abandoned his employment for purposes of his own, and that his injury did not arise out of and in the course of his employment. But the evidence upon this feature of the case is contradictory."

As has been frequently stated, "in the course of * * * employment" points to the place and circumstances under which the accident takes place and the time when it occurs. Even if it be regarded that the appellee was injured while waiting for a possible call to work, we think there was a break in the employment when he wrapped himself around and up against a grate of burning embers and went to sleep—he was doing something wholly foreign to his employment. There was no causal connection between the origin—some hazard of his employment—and the accident. It is not reasonably conceived that the injury flowed as a rational consequence from the source of any occupational risk.

Accordingly, the judgment is reversed for consistent proceedings.