No. 34,778

ETHEL HOLLOWAY, Widow of John Newton Holloway, Deceased, et al., *Appellants,* v. THE CONSOLIDATED GAS, OIL AND MANUFACTURING COMPANY, Respondent, and THE EMPLOYERS' LIABILITY ASSURANCE CORPORATION, Insurance Carrier, *Appellees.*

(102 P. 2d 987)

Opinion filed June 8, 1940.

*A. R. Lamb, Clement A. Reed,* both of Coffeyville, and *Paul A. Lamb,* of Caney, for the appellants.

*Warren B. Grant, O. L. O'Brien* and *Walter L. McVey*, all of Independence, for the appellees.

The opinion of the court was delivered by

SMITH, J.: This was a claim for workmen's compensation. The commissioner of workmen's compensation awarded compensation to the claimant. On appeal to the district court this award was vacated. Judgment was entered for the respondents. The claimant appeals.

The respondent company at the time of the injury was engaged in the business of producing oil and gas. It operated twenty-eight or thirty leases either as the owner or for the owner in Montgomery county. These leases included one known as the "Deffenbaugh" lease and one known as the "Dobson." In February, 1937, the company had undertaken to operate the Deffenbaugh lease, which covered an eighty-acre farm owned by an Independence bank. An arrangement was made whereby the farm tenant had moved off the farm, which made available a two-story farm residence on this eighty-acre place. There were three wells producing oil on this lease. They were pumped from a power plant located on the lease. The Dobson lease was owned by the company and was located about three and one-half or four miles east of the Deffenbaugh lease. It had nine wells producing oil which were pumped from a power-house located on that lease. In February, 1937, Holloway was employed by the company to pump these two leases. He moved into the vacant house that has been mentioned, which was located on the Deffenbaugh lease, and occupied this house with his family. He continued to reside there from that time until the day of his death. When he first started to work his wages were $50 a month. At the time of his death he was receiving $65 a month. On the morning of December 24, 1938, Holloway got up at 4:30 and proceeded to build a fire in the family heating stove. In some manner his clothing became ignited and he was burned so severely that he died that afternoon. His widow made a claim for compensation.

The only disputed point is whether or not Holloway was injured by an accident arising out of and in the course of his employment. It was stipulated that the relationship of employer and employee existed; that the parties were governed by the workmen's compensation act; and that the claim for compensation was made in time. The commissioner of workmen's compensation and the district court

made extensive findings of fact. As has been noted, the commissioner of workmen's compensation found that the accident arose out of and in the regular course of the employment of Holloway and awarded compensation in the amount of $2,700.

The district court found that the accidental injury did not arise out of and in the course of employment of Holloway, but that it arose out of an accident which occurred in looking after his personal affairs, and in making a fire to heat the house for his family, and denied compensation.

The rule is well settled that the jurisdiction of this court in workmen's compensation cases is limited to questions of law. (See *Corpora v. Kansas City Public Service Co.*, 129 Kan. 690, and *Meredith v. Seymour Packing Co.*, 141 Kan. 244.)

If the trial court's finding No. 8 to the effect that the accidental injury did not arise out of and in the course of the employment of Holloway, but arose out of an accident which occurred in looking after his personal affairs and in making a fire to heat the house for his family, be treated by us as a pure finding of fact, this finding would settle this case because this court cannot examine the record and reach a different conclusion as to the facts than was reached by the trial court where the finding of the trial court was supported by substantial evidence.

The claimant, however, argues here that the trial court made extended findings as to the facts and circumstances surrounding the conditions of Holloway's employment and the accident that caused his death, and that finding No. 8 referred to should be more aptly termed a conclusion of law than a finding of fact. The claimant argues that this court should examine the findings of the trial court, and that this examination will disclose that, as a matter of law from the facts and circumstances which the court found, Holloway did die as a result of an accident that arose "out of" and "in the course of" his employment. The trial court found that Holloway died as a result of burns received while he was making a fire in the heating stove in the house occupied by his family on the lease; that he was employed by the respondent in February, 1937, as a pumper and continued in that capacity from February, 1937, until the day of his death; that his compensation was $75 a month, $65 of which was paid to him in cash and $10 was withheld as rental for the lease house occupied by himself and his family. This finding contained the following paragraph:

"That the respondent made it one of the requirements of the employment that the said John Newton Holloway and family occupy the lease house as a residence."

Finding No. 5 was to the effect that Holloway was employed to do the customary duties as pumper of the lease. These duties were set out in the finding as follows:

"(a) To pump the wells on the lease; (b) to keep himself available at all times to coöperate with the gauger who at various times visited the lease for the purpose of taking the oil from the tanks; (c) to make repairs on oil lines, shackle rods and other equipment of the respondent as the same were needed; (d) to preserve and protect the property of the respondent on the lease; (e) to check the oil lines and see whether or not there were any leaks therein; (f) to look after the salt water on the lease; (g) to perform the miscellaneous duties customarily required of a pumper. There was no set time during the day for the pumper to perform any of his regular duties. They were performed at different times during the day and the pumper was obliged to keep himself available at all times."

The next finding of the court was to the effect that on the day of his death Holloway was looking forward to a hard day's work; that it was his custom on such days to arise, go out to the pump house, which was about a quarter of a mile from the lease house, and perform some of his duties as pumper for the respondent, and later return for his breakfast. The next finding was as follows:

"That Mr. Holloway met with an accident when the coal oil which he was using to start the fire caused the clothing which he was wearing to become ignited, inflicting burns to Mr. Holloway which later in the day caused his death. Because of the pumper's type of work, the work clothes he wears became very oily and greasy. At the time Mr. Halloway was burned, he was wearing this oily and greasy clothing. Therefore, as soon as Mr. Holloway's clothing became ignited, it immediately got out of control."

Following these findings were the findings that have been spoken of heretofore, that is, the finding of the commissioner that deceased died as the result of an accidental injury arising out of and in the course of the employment and one by the trial court that the accident that caused his death did not arise out of and in the course of the employment.

In a case such as this if the trial court had made only the one finding our inquiry would have been whether this finding was sustained by the evidence. However, since the court did make findings in detail as to the facts and circumstances surrounding the accident and the employment, we shall consider these findings with a view to determining whether as a matter of law they compel a conclusion other than the final conclusion reached by the trial court. (See

*Rush v. Empire Oil & Refining Co.*, 140 Kan. 198, 34 P. 2d 542.) This is not very much different from considering the question of whether the general finding is supported by the evidence. Since there is really but very little dispute as to the facts, what dispute there is will be noticed now.

Claimant asked the trial court to make an additional finding that on the morning of the accident the temperature was below freezing and there was no place upon the lease for deceased to get warm except in the lease house occupied by himself and his family; that the field superintendent for the respondent would frequently come to the lease in the discharge of his duties of supervising the lease that the deceased was pumping and when the weather was cold he would come to the lease house to get warm and discussions relative to the work upon the lease were held in this house; that the lubricating oil was kept in this lease house that was occupied by the deceased and his family so that no one would steal it.

This motion was denied. The claimant argues that this was error which should cause the case to be sent back to the district court for a new trial. This argument is not good. There is no provision in the workmen's compensation act for post-trial motions such as this one. (See *Souden v. Rine Drilling Co.*, 150 Kan. 239, 92 P. 2d 74.) The effect of our passing on this motion would be to pass on a question of fact. This we cannot do. It may be noted, however, that in view of the conclusion we have reached as to the merits, the failure of the trial court to make these findings will not have any effect on the final outcome of this action.

Our question may be stated as follows: Deceased was compelled by his contract of employment to live on the lease; the house was furnished him by his employer; he did live on the lease with his family; he was on duty twenty-four hours a day; the weather was cold and he was compelled to have a fire in his house; his clothing was oily and greasy on account of the type of work he was doing; he was looking forward to a hard day's work; on the morning of his death he arose early and in attempting to light a fire in the heating stove in the house occupied by himself and his family as a dwelling his clothing became ignited and he was fatally burned.

G. S. 1935, 44-501, provides, in part, as follows:

"If in any employment to which this act applies, personal injury by accident arising out of and in the course of employment is caused to a workman, his employer shall, subject as hereinafter mentioned, be liable to pay compensation. . . ."

The accident must arise "out of" and it must happen "in the course of" the employment in order for the act to apply. Each of these terms has a distinct meaning. "In the course of" employment simply means while the employment was going on. (See *Cox v. Refining Co.*, 108 Kan. 320, 195 Pac. 863.) The words point to the time, place and circumstances under which the accident took place. (See *Rush v. Empire Oil & Refining Co.*, 140 Kan. 198, 34 P. 2d 542.)

Do the findings of the trial court bring this case within the meaning of this term? The fact that deceased was compelled to live on the lease and to be on duty twenty-four hours a day and to have a warm place to stay, which would necessitate the building of a fire in the heating stove, cannot be held to have this effect. In the first place, the building of this particular fire was as much for the comfort and well-being of the members of the family of deceased as for enabling him to carry on his employment. He would have been compelled to build a fire in a heating stove or furnace no matter where he lived or what had been his employment unless he happened to live in an apartment house where a janitor took care of that duty. The act of building this fire was no more a part of his employment than the act of helping his wife do the supper dishes would have been. Suppose he had cut his hand on a glass while drying it in the kitchen, would anyone argue that such an accident happened "in the course of" his employment? It has been said many times that workmen's compensation has been provided so that industry should bear the expense of those injured while engaged in carrying it on. But in order for this theory to apply here we would be compelled to conclude that this man would not have been compelled to build a fire in a heating stove on a cold morning except for the fact that he was employed as a pumper on a lease. We all know such was not the case.

The claimant places great reliance on *Benson v. Railway Co.*, 104 Kan. 198, 178 Pac. 747. In that case a depot agent was injured when he used coal oil to start a fire in a stove in the station house. The trial court instructed the jury that the accident happened "in the course of" the employment. The action is readily distinguishable from this, since in that case the agent was starting the fire as a part of his duties as station agent for the benefit of his employer. We have examined other cases cited by claimant and find them not in point. There is much more reason for holding that the accident did not arise "out of" the employment. These words point to the

cause or origin of the accident. There must be some causal connection between the accidental injury and the employment. Was there such a connection shown here? The only possible ground for so holding is the finding that the clothing of deceased was oil soaked on account of his work as a pumper so that when his clothing became ignited it blazed up quickly and thus caused him to be burned worse than he would otherwise have been. The trouble about this argument is that the occurrence of the clothing of some man catching fire while he is building a fire with coal oil is so common we all know that it might very well happen if there had been no oil at all on the clothing of deceased.

In *Schooley v. Swanson,* 147 Kan. 758, 78 P. 2d 858, the claimant was to live on a tract of land, feed some cattle and do whatever was necessary for their care. He obtained permission from the owner of the land, who was not his employer, to remove some trees. He used the wood from some of these trees as fuel. One evening while he was chopping wood to be used in cooking supper a stick hit him in the nose and injured him. He claimed compensation. The trial court held that the injury did not arise "out of" the employment. This court affirmed the lower court and used some language which might very well be used here. This court said:

"The cooking of the meal for claimant and his family, and the chopping of the fuel as an incident to the cooking of the meal, was in no sense one of the hazards of the employment. The accident did not arise because of his employment of feeding cattle and it was in no reasonable way traceable to it. Clearly, therefore, the accident did not arise out of the employment. This eliminates the first requisite." (p. 761.)

To the same general effect is the case of *Matter of Pisko v. Mintz,* 262 N. Y. 176, 186 N. E. 434. In that case a janitor was suffocated by a fire that occurred in a room he was occupying with his family as a part of his compensation for services. The court of appeals held that the accident did not arise "out of" the employment. The court said:

"Everything, however, which happens to an employee occupying rooms in a building, the rental of which he receives as part of his compensation, is not attributable to the dangers or risks of his employment. . . . On the other hand, we may take the extreme case by way of illustration of a cut received by the employee while shaving himself, or the slipping in a bathtub while taking a bath, or the pulling over upon himself of a piece of furniture while attempting to move it, or burning himself while cooking his meals; all these and like occurrences would arise out of no risk of the employment and would not be occasioned because the employee was obliged to stay upon

the premises or in a particular room or apartment. They would be such personal acts, disassociated from his employment, as would be likely to occur anywhere and in any place that the employee happened to live." (pp. 178, 179.)

The building of a fire in a heating stove is about the sort of personal act spoken of in the above quotation. (See, also, *Sellers v. Reice Construction Co.*, 124 Kan. 550, 262 Pac. 19; also, *Finck v. Galloway*, 139 Kan. 173, 29 P. 2d 1091; also, *Hudson v. Salina Country Club*, 148 Kan. 697, 84 P. 2d 854.)

In *Covert v. John Morrell & Co.*, 138 Kan. 592, 27 P. 2d 553, the workman was a traveling salesman. While he was driving upon the road the windshield of his car was broken by a chunk of mud intentionally thrown from another car, causing the workman to lose an eye. This court said:

"It must arise out of a risk in some way peculiar to that in which he was engaged and not out of a hazard to which he would be equally exposed outside of the business. Claimant's injury might have been sustained while traveling for his own pleasure as well as while he was in defendant's employment. The employment in no way provoked or invited the attack. Apparently the occupants of the car would have thrown the mud whether or not the claimant had been employed by defendant." (p. 593.)

Claimant has cited many cases where the courts have held that the surrounding facts and circumstances brought the particular case under the statute. We have examined these cases. They do not establish any different rule than has been mentioned here. In each of them there was causal connection between the employment and the accident. There was no such connection here.

The judgment of the trial court is affirmed.