72 N.J. Super. 499 (1962)
178 A.2d 644
ANNA BROOKS AND HOMER BROOKS, PLAINTIFFS-RESPONDENTS,
v.
DEE REALTY CO., INC., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 19, 1962.
Decided March 5, 1962.
*501 Before Judges CONFORD, GAULKIN and KILKENNY.
Mr. H. Curtis Meanor argued the cause for appellant (Mr. Thomas T. Chappell, of counsel; Messrs. Lamb, Langan & Blake, attorneys).
Mr. Francis Sorin argued the cause for respondents.
The opinion of the court was delivered by KILKENNY, J.A.D.
Mrs. Brooks was injured on June 20, 1957 when a wall cabinet containing dishes fell as she was mopping the kitchen floor in the four-room apartment occupied by her and her husband in defendant's tenement house at 512 Central Avenue, Union City, New Jersey. She and her husband, acting jointly as superintendents of the building, were given free occupancy of their apartment and $25 monthly in exchange for their services.
Mrs. Brooks sued the defendant in negligence in the Superior Court, Law Division, to recover for her injuries, and her husband joined in the action for his damages per quod. Defendant denied any negligence on its part and pleaded the usual defenses of contributory negligence, assumption of risk, and its lack of control of the instrumentality which caused Mrs. Brooks' injury. As a further separate defense, it alleged that the injuries to Mrs. Brooks were the result of an accident arising out of and in the course of her employment and for that reason her remedy was exclusively under the Workmen's Compensation Law.
The case was tried before a jury. Defendant's motions at the end of plaintiffs' case and at the close of all the evidence *502 for a dismissal on the ground, among others, that plaintiffs had no right to bring a common law negligence action in the Law Division because the claim was exclusively remediable in the Division of Workmen's Compensation, were denied. The jury returned a verdict in favor of the plaintiffs, awarding Mrs. Brooks $4,000 for her personal injuries and granting her husband $1,000 for his damages per quod. Defendant's motion for a new trial was denied. It thereupon appealed from the judgment based upon the jury's verdict and from the order denying a new trial.
If Mrs. Brooks' injuries were the result of an accident arising out of and in the course of her employment by the defendant, her remedy obviously would be limited to the benefits provided in the Workmen's Compensation Law. R.S. 34:15-7; New Amsterdam Casualty Co. v. Popovich, 18 N.J. 218 (1955); Dudley v. Victor Lynn Lines, 32 N.J. 479, 488 (1960). There was no evidence that plaintiffs and defendant had agreed prior to the accident to be bound by the provisions of Article 1 of the Compensation Act, R.S. 34:15-1, which permits an injured employee to sue his employer in a court of law for negligence. Accordingly, upon the hypothesis stated above, Mrs. Brooks would be obliged to pursue her claim under Article 2 of the statute, R.S. 34:15-9, in the Division of Workmen's Compensation. If her remedy was restricted to workmen's compensation benefits, her husband's per quod claim in the law action would also fall. Danek v. Hommer, 9 N.J. 56 (1952).
Was Mrs. Brooks injured in an accident arising out of and during the course of her employment? She and her husband became occupants of this apartment on the second floor of 512 Central Avenue about 1954 or 1955, when both were engaged by Mrs. Echelchik, defendant's predecessor in title, to act as superintendents of the building. Their duties consisted generally in cleaning the hallways, taking out the garbage, making minor repairs only, renting vacant apartments, collecting the rent and, during Mrs. Echelchik's ownership, depositing the rent money in the bank. As *503 noted above, they received for their services free occupancy of their apartment and $25 monthly. Subsequently, when defendant became owner of the premises, plaintiffs, as superintendents, received the same benefits and performed the same duties, except that they did not deposit the rent money collected but turned it over to an agent for the defendant.
Mrs. Brooks testified that most of her time was spent in the apartment house, because they were on call 24 hours a day and were, in fact, called at all hours of the day and night by the tenants because of leaks or other services required.
About 5:30 A.M. on June 19, 1957 Mrs. Brooks discovered that a leak had developed in the apartment above that occupied by plaintiffs and, as a result, great quantities of water descended into plaintiffs' apartment. Mrs. Brooks described the deluge as being "like Niagara Falls." The water covered their kitchen and bathroom floors and saturated the ceiling and walls of these rooms. Mrs. Brooks went immediately to the upstairs apartment and turned off the water there, but the water which had already escaped from the leaking pipe continued its descent into the Brookses' apartment for some time thereafter.
Defendant's business office did not open until 9 A.M., so that Mrs. Brooks was obliged to wait until that hour to give notice of the leak. She reported by telephone that the leak was a bad one and defendant said it would send someone down. The walls, ceiling and floor of her apartment had been saturated with water. However, the landlord's plumber did not arrive on June 19 and, during that entire day, water kept descending into plaintiffs' apartment and Mrs. Brooks kept mopping it up. When Mr. Brooks returned home that night at about 8:30 P.M. from his outside job, the walls, ceiling and floors of their apartment were still obviously wet.
The plumber arrived on the morning of June 20, 1957 and the leak was repaired at about 10 A.M. Later that *504 day, about 3:30 P.M., Mrs. Brooks was mopping her kitchen floor to take care of some water which had seeped through from the bathroom, when one of the three cabinets affixed to the kitchen wall and used for storing dishes suddenly fell with its contents to the floor. Mrs. Brooks did not see the cabinet fall, because her back was to it at that moment. But she heard the loud noise which the fall of the cabinet and dishes generated, describing the noise as being "like thunder, like an earthquake." She was not struck by the cabinet or by the dishes hurled therefrom, though "the dishes came running out" and she was surrounded by cups and saucers all over the floor and some of them were touching her feet. She turned around and held the stove to protect herself and, in doing so, wrenched her back. She was evidently greatly frightened by the incident because, as she testified, "I felt numb. I couldn't move. I couldn't even get away from the stove."
We need not detail the nature and extent of Mrs. Brooks' injuries or consider the reasonableness of the damages awarded therefor, because neither side makes an issue thereof on this appeal and we are determining this appeal on other grounds. We are not called upon to review Mrs. Brooks' right to recover for the injurious consequences of the fright to which she was subjected by the falling of the cabinet and dishes in close proximity to her, or the trial court's instructions to the jury as to the law governing such situations, although the trial record indicates that the jury experienced some difficulty, at least initially, in understanding that phase of the charge. Nor does the defendant challenge the sufficiency of the testimony furnished by plaintiffs' expert witness, Mr. Connolly, explaining why the installation of this cabinet did not conform to accepted standards, or his opinion that the fall of the cabinet was due to this improper installation and the soaking of the walls, which caused a disintegration of the plaster and a softening of the wood, with a consequent lessening of the holding power of the nails.
*505 The status of superintendents of tenement and apartment houses as employees entitled to the benefits of the Workmen's Compensation Act is well recognized. Hayes v. Ambassador Court, Inc., 58 N.J. Super. 215 (App. Div. 1959); Fitzpatrick v. Haberman, 16 N.J. Super. 490 (App. Div. 1951). For a recent case involving a husband-wife team employed jointly as superintendents of an apartment house, see Maver v. Dwelling Managers Co., 34 N.J. 440 (1961).
The instant accident happened within the time and space limitations of Mrs. Brooks' employment. She was at a place on defendant's premises, albeit her own apartment, where the tenants and agents of the defendant would normally expect to find her or her husband, if they desired performance of some service by the superintendent. Being on call 24 hours of the day, it cannot be said that the accident occurred after working hours. She had responded at 5:30 A.M. on the preceding morning when the need for action arose, and had performed the necessary task of going upstairs to shut off the water. In 1 Larson, Workmen's Compensation Law, § 24.00, p. 372, it is said:
"When an employee is required to live on the premises, either by his contract of employment or by the nature of the employment, and is continuously on call (whether or not actually on duty), the entire period of his presence on the premises pursuant to this requirement is deemed included in the course of employment."
Under § 24.21, pp. 373-376, the author cites numerous cases upholding this principle.
Illustrative of the breadth of coverage applicable to workers who live on the premises and have unspecified hours of duty are: Scott v. Hoage, 63 App. D.C. 391, 73 F.2d 114 (D.C. Cir. 1934), in which a resident janitor of an apartment house was burned to death by an accidental fire during the night; Martin v. Platt, 293 N.Y. 617, 59 N.E.2d 429, 158 A.L.R. 603 (Ct. App. 1944), in which a domestic servant fell for some unknown reason while dressing *506 in the morning in the room furnished by her employer; Mowen v. Chase National Bank, 277 N.Y. 135, 13 N.E.2d 607 (Ct. App. 1938), which involved an injury suffered by a caretaker of a two-family house who fell down the stairs while answering the door for an unknown caller; Favorite v. Kalamazoo State Hospital, 238 Mich. 566, 214 N.W. 229 (Sup. Ct. 1927), in which a nurse, who was off-duty but required to remain on the grounds, fell on the ice while walking between the hospital and the home; Jasnig v. Winter, 115 N.J.L. 320 (Sup. Ct. 1935), affirmed 116 N.J.L. 181 (E. & A. 1936), allowing compensation to a dressmaker who remained overnight at the house of her employer and was injured by a fall while going to the bathroom; Bruyere v. Walker, 7 N.J. Misc. 716 (Dept. Labor 1929), a case involving a handyman on an estate, subject to call at all hours, who cut his foot taking a bath; Taylor v. 110 S. Penn. Ave. Corp., 117 N.J.L. 346 (Sup. Ct. 1936), in which a hotel dishwasher, off-duty but on call, was injured while taking a shower; Allen v. Glaser, 4 N.J. Misc. 754 (Dept. Labor 1926), a waitress, part of whose compensation included lodging, was burned to death while sleeping upon the premises of her employer.
Plaintiffs call attention to the following passage in 1 Larson, Workmen's Compensation Law, § 24.22, p. 376, noting limitations on this "on call" coverage:
"When compensation has been denied to employees in this category, it has usually been on the theory that the activity was too distinctly personal to support an award. For example, awards have been refused for injuries when a watchman was asphyxiated as a result of preparing tea for himself on a gas plate [Commissioner of Taxation & Finance v. Fure, 264 N.Y. 678, 191 N.E. 623 (Ct. App. 1934)]; when a caretaker of an apartment had an identical misfortune while preparing coffee [Meehan v. Marion Manor Apartments, 305 Mich. 262, 9 N.W.2d 534 (Sup. Ct. 1943)]: when a watchman [McKenna v. Atlas Contractors, 275 App. Div. 876, 88 N.Y.S.2d 668 (1949)] and a janitor [Pisko v. Mintz. 262 N.Y. 176, 186 N.E. 434 (Ct. App. 1933)] set fire to themselves apparently by smoking in bed."
*507 Larson finds it difficult to reconcile in principle these last-mentioned cases with those noted above, but observes that a line must be drawn "somewhere short of unlimited coverage of everything that happens on the premises." See Loyola University v. Industrial Commission, 408 Ill. 139, 96 N.E.2d 509 (Sup. Ct. 1951).
Plaintiffs stress that the work which Mrs. Brooks was doing at the time of the accident was in her own apartment, for her own purpose, and was not within the ambit of her duties as superintendent. They argue that they were tenants as well as superintendents, and that as tenants they have a right to sue the defendant at law for breach of the duty owed to them in that capacity.
It is true that plaintiffs' duties as superintendents did not expressly include the mopping of floors on the interior of the apartments. No doubt, too, the cleanliness of the Brookses' apartment was a matter of personal interest to them and served their personal comfort. But, at the same time, Mrs. Brooks' work effort inside her apartment in mopping up the great quantities of water that descended therein from the upstairs apartment was also an act in furtherance of her employer's welfare. She was helping to minimize the damage to the apartment occupied by herself and her husband, and to prevent further seepage and its consequent damage to the apartment below. Her activity was not so "distinctly personal," such as preparing tea for herself or smoking in bed, the situations in Commissioner of Taxation & Finance v. Fure and McKenna v. Atlas Contractors, supra, as to require us to decide whether New Jersey should invoke the limitations on the "on call" workmen's compensation coverage applied in those cases. She was, at the very least, serving a dual purpose at the time of the accident, namely, the pursuit of her own livable comfort and the conservation of her employer's property.
An employee, who is injured while exposed to a "neutral risk," one which has as much to do with the employment as with the personal life of the employee, is *508 entitled to the benefits of the Workmen's Compensation Law. Larson, "The Legal Aspects of Causation in Workmen's Compensation," 8 Rutgers L. Rev. 423 (1954); Pisapia v. City of Newark, 47 N.J. Super. 353 (Cty. Ct. 1957). Under our broad, liberal policy of extending the benefits of the Workmen's Compensation Law to injured employees, we would have no hesitancy in holding that Mrs. Brooks had sustained a compensable accident, if a challenge upon her right to compensation were now being asserted by her employer in a workmen's compensation proceeding. Consistency requires us to use the same legal yardstick, when the employer is contending that the Workmen's Compensation Law applies.
A good example of a risk growing out of the employment, while involving at the same time the personal comfort of the employee, is found in Finnegan v. Bichn, 276 N.Y. 50, 11 N.E.2d 348 (Ct. App. 1937). There, a husband and wife acted as janitors of a tenement house, which all other tenants had vacated, receiving for their services in remaining there and watching the building a small monthly wage and the use of an apartment in the building. The tenement contained no central heating system. The janitors were burned to death in a fire which occurred when an oil heater used by them to keep their apartment warm accidentally overturned. Their deaths were held compensable because they "were caused by a risk growing out of the employment and were not the result of a personal act of the employee disassociated from the place of employment." (11 N.E.2d at p. 349). Commissioner v. Fure and Pisko v. Mintz, supra, were distinguished on the ground that the injury in both of those cases "was the result of and caused by the act of the employee which was purely personal and disassociated from his employment."
The fact that the employee is injured in his assigned living quarters, while not performing any act for his employer, will not affect compensability, if "but for" the employment the employee would not have been exposed to the risk. *509 In Madin v. Industrial Accident Commission, 46 Cal.2d 90, 292 P.2d 892 (Sup. Ct. 1956), a husband and wife who were caretakers and managers of a 14-unit rental property, available 24 hours a day to meet any problem that might arise, were injured at 2 A.M. while they were asleep in their quarters. Some boys had started a bulldozer parked for the night on an adjacent property not owned by their employer, the machine went out of control and ran into the unit occupied by them. They were allowed compensation under the "positional risk" doctrine, since the employment had brought them to a place where they were subjected to this risk.
New Jersey has adopted this "positional risk" or "but for" test in applying its workmen's compensation law. Gargiulo v. Gargiulo, 13 N.J. 8 (1953); Howard v. Harwood's Restaurant Co., 25 N.J. 72 (1957); Crotty v. Driver Harris Co., 49 N.J. Super. 60, 72 (App. Div. 1958), certif. den. 27 N.J. 75 (1958). On that theory, as well, Mrs. Brooks became entitled to the benefits of the Workmen's Compensation Law. Her position required her availability in her apartment, when her husband was away at work during the daytime, at least when she was not doing the other chores involved in her employment. "But for" her presence so required in her apartment when the cabinet fell, she would not have sustained her injury. The falling cabinet, as would a falling ceiling, at a place where she was obliged to be in partial fulfillment of her employment duties, constituted a risk incidental thereto which entitled her to workmen's compensation benefits for injuries resulting from exposure to that risk.
We conclude, therefore, that Mrs. Brooks' injuries were the result of an accident arising out of and during the course of her employment by the defendant. Her remedy was limited to the benefits provided in the Workmen's Compensation Law. The trial court should have granted defendant's motions for a dismissal of plaintiffs' negligence action in the Law Division.
*510 In view of our determination above, it becomes unnecessary for us to decide the other two points urged by defendant as grounds for reversal.
The judgment of the Law Division in favor of the plaintiffs is reversed and their negligence action is dismissed.
We were advised at oral argument that Mrs. Brooks filed a workmen's compensation claim petition on or about September 2, 1959 and suffered it to be dismissed for lack of prosecution in January 1961, a few weeks before trial of her negligence suit in the Law Division. The trial record also discloses that prior to filing her compensation petition she received some medical payments from defendant's compensation carrier, which is the same company insuring defendant against negligence liability claims. Our dismissal of the Law Division action is without prejudice to the pursuit by Mrs. Brooks of any remedy she may have in the Division of Workmen's Compensation as a result of the outcome of this appeal.