[Civil No. 3901. Filed January 31, 1938.]

[75 Pac. (2d) 692.]

ELIZABETH A. KRUPP, Petitioner, v. J. C. PENNEY COMPANY, Defendant Employer, THE EMPLOYERS' LIABILITY ASSURANCE CORPORATION, LTD., Defendant Insurance Carrier, Respondents.

Mr. Clarence E. Houston, for Petitioner.

Messrs. Snell, Strouss & Salmon, for Respondent Insurance Carrier.

LOCKWOOD, J.—Elizabeth A. Krupp, hereinafter called petitioner, presented her claim to the Industrial Commission, hereinafter called the commission, asking for an award of compensation for an injury which she alleged she had received in an accident arising out of and in the due course of her employment for the J. C. Penney Company, hereinafter called the employer. The commission made the following findings and awards:

"Findings.

"1. That the above named applicant while employed in the State of Arizona by the above named defendant employer, sustained an injury by accident arising out of and in the course of her said employment on or about November 27, 1935.

"2. That at said time said employer and said employee were subject to the terms of the Workmen's

Compensation Law and to the jurisdiction of this Commission.

"3. That at said time said employer was insured against the liability for compensation imposed by said law by the above named defendant insurance carrier.

"4. That the evidence is insufficient to establish that said injury caused any temporary or permanent partial disability, and the evidence is further insufficient to establish that the disability from which said applicant alleges to be suffering is proximately the result of injury.

"Award.

"Now, Therefore, It is ordered that the applicant take nothing from the defendants, or either of them, by reason of said claim."

It affirmed the same on a rehearing, whereupon the matter was brought before us for review.

The sole question before us is whether the evidence fairly sustains the findings and award. In passing upon this, we of course apply the rule which we have so often stated, that if there is any substantial evidence supporting the findings of the commission, or it is in conflict so that reasonable men might differ as to the ultimate facts, we will sustain the findings. *Johnson* v. *T. B. Stewart Const. Co.,* 37 Ariz. 250, 293 Pac. 20; *Blankenship* v. *Industrial Com.,* 34 Ariz. 2, 267 Pac. 203; *Doby* v. *Miami Trust Co.,* 39 Ariz. 228, 5 Pac. (2d) 187.

There is no conflict in the evidence to the effect that while petitioner was engaged in her duties as an employee of the J. C. Penney Company, and on the 27th of November, 1935, she fell and struck her elbow very severely against a table. It is equally undisputed that she suffered great pain immediately after such fall, and for some time thereafter, and was treated by various physicians for a condition presumably arising from the fall. It is also uncontradicted that she attempted to return to work several times, but ceased her efforts on account of the pain which she suffered, and that this

condition continued for a considerable period. There is a sharp dispute, however, between the physicians as to just what caused her suffering and inability to work. It was the contention of petitioner that early in her childhood she had an accident which resulted in the disruption of a large fragment of bone on the lower end of the left humerus; that this fragment had subsequently reunited to the humerus by a fibrous growth which immobilized the fragment so that she could pursue her ordinary avocation without pain or difficulty; that the fall and blow on the elbow above referred to disrupted the fibrous growth so that the bone became loose in the muscular tissue, and that any movement of the arm thereafter caused the bone to rub against and pierce the muscles and cause her intense pain, so that she was unable to work. This view of the result of the fall and the cause of her pain and suffering and inability to work was taken by Dr. N. C. Bledsoe, one of the leading physicians of Tucson, who examined and treated her for a short time, and by Dr. Ellis Jones, who is one of the best known bone specialists of the southwest. They agreed that the only remedy was an operation; either to remove the bony fragment or to graft it again on the humerus. This operation was performed successfully by Dr. Jones, and, according to petitioner, her health and strength was eventually restored so that she was able to return to work, with little permanent disability from the accident. On the other hand, Dr. Geo. W. Purcell, of Tucson, who treated her immediately after the accident and for a month following, was of the opinion that her pain and inability to work was caused solely by a bruise of the ulnar nerve through the fall, and that this condition was not permanent, although he said it might continue indefinitely, and in his opinion, would extend five or six months at least. The medical advisory board did not examine petitioner personally, but on going over the

reports of the doctors who had treated her, stated that in their opinion the bone condition which existed after the accident was in no way related to the accident. They expressed no opinion in regard to the effect of the accident in producing an injury or bruise to the ulnar nerve. The commission found the evidence was insufficient to establish that the accident resulted in an injury which caused her temporary or partial disability.

We are of the opinion that the finding was not sustained by the evidence. The accident was admitted; it was not disputed that petitioner suffered severely as a result thereof, or that she did not work for a considerable period of time. There is no suggestion in the evidence of malingering on her part. The only dispute is as to what caused her disability, and as to how long such disability extended. This is a matter, of course, for medical testimony. Part of the physicians who considered the case were of the opinion the disability was due to the fall breaking loose a fragment of bone; the others thought that the bone condition was not caused by the fall; and that such condition did not affect her ability to work. One of the physicians stated it was his opinion that her condition was caused by a severe bruise to the ulnar nerve, and that such a bruise might create a disability which would extend through an indefinite period, while the particular bruise in question would cause a disability of at least from four to six months. But no one suggested her condition was due to any other cause than one of the two stated. We have then an admitted accident and inability to work thereafter, an explanation of that inability by one of two theories; an injury to the ulnar nerve, or else the breaking loose of a previous immobilized fragment of bone, either of which, if true, would make it compensable; *and no suggestion of any other cause for her condition.* Apparently the com-

mission was of the opinion that unless petitioner proved her disability was caused by the precise character of injury set up in her petition, she was entitled to no compensation. This is too narrow a view of the law. The Workmen's Compensation Law is remedial and is to be construed liberally in favor of the injured employee. *Ocean Accident & Guarantee Corp.* v. *Com.,* 32 Ariz. 265, 257 Pac. 641; *S. H. Kress & Co.* v. *Com.,* 38 Ariz. 330, 299 Pac. 1034. If, as a matter of fact, her inability to work was caused by a bruised ulnar nerve, it is just as much compensable as if it had been caused by a broken leg or a crushed chest; and the fact that she thought it was one character of injury which caused her disability when, in reality, it was another one, should not and does not affect her right to compensation. It is only in case that she testified falsely as to her ability to work, or *that the evidence shows some uncompensable cause which might reasonably have caused such disability,* that the commission would be authorized to deny her compensation. We have frequently in the past sustained awards of the commission denying compensation when the evidence showed the disability in question might have been caused by either a compensable or a noncompensable cause; but where the accident is admitted, the disability is proved, there is evidence of some compensable injury causing the disability, and nothing in the evidence suggesting any noncompensable cause, the commission may not deny compensation on the theory the disability was caused by some unknown condition. Of course, if her inability to work was not caused by a change in the bone structure of her arm, she would not be entitled to recover for the expense of curing that condition; but if such inability was the result of either a bruised nerve or injured bone, she would certainly be entitled to compensation for the lost time and for the reasonable cost of the

medical treatment of the particular form of injury which caused her disability.

The employer did not carry industrial insurance with the Industrial Commission, but carried it with the Employers' Liability Assurance Corporation, Limited, hereinafter called the carrier. It is suggested in the brief of the latter that her employer continued her salary for the full period of disability, and that under such circumstances an injured employee is not entitled to compensation for lost time, but at the most for the cost of medical treatment made necessary by the injury. This is a question which has never arisen in this state, but is of some importance. The Workmen's Compensation Law of Arizona (Revised Code 1928, section 1391 et seq., as amended), is silent upon this specific point. That portion of the statute granting compensation is section 1421, Revised Code 1928, which reads as follows:

*"Payment of compensation.* Every employee, hereinbefore designated, who is injured, and the dependents of every such employee who is killed, by accident arising out of and in the course of his employment, wheresoever such injury has occurred, unless purposely self-inflicted, shall be entitled to receive, and shall be paid such compensation for *loss sustained* on account of such injury or death, and such medical, nurse and hospital services and medicines, and such amount of funeral expenses, in case of death, as are herein provided." (Italics ours.)

The remainder of the statute which establishes the method and amount of compensation says nothing in regard to any reduction thereof because of the fact that an employer may, in the kindness of his heart, or because of some agreement with an employee, continue to pay wages for services which were not and could not be performed by reason of the accident and injury.

It will be seen the language of section 1421, *supra,* is "shall be entitled to receive, and shall be

paid such compensation for *loss sustained* on account of such injury or death,'' and it may perhaps be said that if the employee had been paid his regular salary he has sustained no loss. This argument, however, overlooks two facts: First, that he has sustained a loss of his regular compensation which is his right for services performed, and that he has received merely a gratuity, dependent entirely upon the will of the employer, if the payment be considered as voluntary; and second, if it be, as is sometimes the case, in the nature of a pension or benefit for which the employee has paid by a deduction from his wages, it is then not wages, but insurance paid for by the employee himself through a reduction in his wages and which he is entitled to receive, regardless of the Compensation Law. Further, it might be said that whatever may be the rule when the injured employee's award is paid directly by the employer, certainly when it is paid by a third party who has promised the employer for hire that he will pay promptly and primarily any award that may be made to an employee as a result of an injury, such promisor may not be relieved of his specific promise by reason of the fact that the employer has voluntarily given a gratuity to an employee which he was in nowise obliged to pay.

Under our statute the compensation of an injured employee is secured to him in four different ways: (a) The employer may carry insurance with the State Compensation Fund; (b) he may insure the payment with a corporation authorized to transact the business of workmen's compensation insurance; (c) if the employer is financially sound, in the opinion of the commission, he may make a deposit as security for the payment of awards, together with a certain percentage of the premiums paid a regular insurance carrier, and may then pay the awards directly as they are made; (d) in case he follows none of these methods, the work-

man may elect between securing an award under the Compensation Law and collecting it from the employer as an ordinary judgment, or he may waive the Compensation Law and sue under the other remedies allowed for injury or death by negligence. In the first two cases the employer pays a premium for the insurance to the carrier which is fixed by the commission and is based upon the probability of injury in the particular industry, without taking into consideration any possibility of a gratuity or bonus by the employer as a substitute for the legal compensation awarded by the act. In the present case, the employer secured the payment of awards for injuries to its employees under (b). The liability of the carrier under such system was primary, direct, and immediate, and its compensation was based upon a certain percentage of the pay roll of the employer which included, of course, the salary of petitioner in the present case. This premium was not affected by the number of awards which the carrier was compelled to pay during the life of the policy. It was an insurer for hire at a fixed compensation. We do not see where its liability could or should be affected by a gratuity given an injured employee by his employer, any more than if such gratuity were paid by a third person in no way connected with the situation. We hold, therefore, that an insurer carrier under (a) and (b), as above set forth, may not set off, as against an award which it has insured the payment of, any sums given by the employer to the employee in the nature of continued wages, gratuities, or other payments, reserving expressly for future consideration the rule where the award is paid under (c) and (d).

The award is set aside.

McALISTER, C. J., and ROSS, J., concur.