GRAHAM *v.* CITY OF LANSING.

1. WORKMEN'S COMPENSATION—ACCIDENTAL INJURIES—FINDING OF DEPARTMENT—EVIDENCE.

    In proceeding by employee of municipal public works department to recover workmen's compensation for injuries to stump of leg which had been previously amputated below knee, sustained when he jumped from city's truck that had carried him to his work, evidence *held,* sufficient to sustain finding of department that accident arose out of and in course of employment.

2. SAME—FINDING BY DEPARTMENT—EVIDENCE.

    The Supreme Court is bound by finding of fact by department of labor and industry where there is competent evidence to sustain such finding (2 Comp. Laws 1929, § 8451).

3. SAME—NOTICE OF INJURY TO LEG—MUNICIPAL CORPORATIONS.

    In proceeding by employee of municipal public works department to recover workmen's compensation for accidental injury to stump of leg which had previously been amputated below knee, evidence from which it appears an alderman, the superintendent of public works, a city employee who generally took injured employees to a doctor, a council committee and doctor to whom some injured city employees had been

taken for treatment knew of plaintiff's injury within time required by statute and other evidence was sufficient to sustain department's finding that defendant had timely notice and knowledge (2 Comp. Laws .1929, § 8431).

Appeal from Department of Labor and Industry. Submitted July 30, 1942. (Docket No. 82, Calendar No. 41,968.)   Decided October 5, 1942.

Albert Graham presented his claim against City of Lansing, a municipal corporation, for compensation for injuries sustained while in defendant's employ. Award to plaintiff. Defendant appeals. Affirmed.

*Fred L. Warner,* for plaintiff.

*Clay Campbell,* for defendant.

NORTH, J.   This is an appeal by the defendant city of Lansing from an award of compensation to plaintiff, Albert Graham. Appellant asserts that the award should be vacated because the record does not establish: (1) that plaintiff received an accidental injury within the meaning of the workmen's compensation act, nor (2) that defendant had notice or knowledge of such injury within the time prescribed by that act.

Plaintiff was employed through its department of public works by the city of Lansing from June, 1940, to May, 1941, but not continuously subsequent to the accident involved in this suit. In 1926, while employed by a railroad as a switchman, he had suffered an injury which resulted in the amputation of his left leg about six inches below the knee. The accidental injury involved in the instant case is claimed by plaintiff to have occurred October 25, 1940. At that time plaintiff and his fellow employees were carried in city dump trucks from the

Lansing city sheds to and from their various places of work in grading or cleaning streets. On the day in question plaintiff claims that as he alighted from the truck, he "jumped and a little too much weight went on my artificial leg," and injury resulted to the stub of his left leg. Plaintiff testified: "We were all supposed to be off the truck. The driver thought we were off the truck. I went to get off the truck, gravel truck with dump box on. I stepped on the hind wheel to get off, the only way I had to get off. The driver thought I was off and he started up and I had to jump and I jumped a little too hard. * * * A little too much weight went on my artificial leg. I cracked my leg." Plaintiff further testified that he did not fall down when he jumped from the truck to the ground, that he continued working during the afternoon, but that when he removed his artificial leg at home in the evening, he found the stump of his leg had been bleeding. He asserts that the stump of his leg cracked or split open as a result of his jumping from the truck to the ground. However, he continued with his employment for 6 or 8 days. Then, as he testified: "I gave up and went home. I couldn't stand to work on the leg any longer. I was off that leg off and on ever since I was on crutches, almost all winter. Leg swelled up so I couldn't get my leg out." By the latter statement he evidently meant he could not get his leg out of the portion of the artificial limb into which it fitted. And plaintiff further testified:

"*Q.* This action arose out of and in the course of your employment? It was part of your job to ride on this truck?
"*A.* Yes."

In view of the foregoing and other portions of the record, we think there clearly is competent testi-

mony tending to establish plaintiff's claim that he sustained an accidental injury which arose out of and in the course of his employment. The department so found, and we are bound by that determination.*

The remaining question presented by this appeal is whether defendant had knowledge or notice of plaintiff's injury within the time prescribed by the workmen's compensation act. 2 Comp. Laws 1929, § 8431 (Stat. Ann. § 17.165). The testimony on this phase of the case is somewhat scrambled, and not as clear, definite and persuasive as might be desired. However, there is testimony from which it may fairly be concluded that what had happened to plaintiff was communicated by him to Marshall Graham and to Walter Morse. The former was an alderman of the city of Lansing and had been instrumental in securing plaintiff's employment by the city. Though of the same name, he was not related to plaintiff; and he had no direct official connection with the city department through which plaintiff was employed. While Walter Morse seems to have been only a fellow city employee engaged in driving trucks and doing general errands, there is testimony that: "He is the man when anybody gets hurt, he takes them to the doctor at that time." Sometime after plaintiff's injury, he was provided with a pair of crutches by Morse. While it may well be questioned whether notice alone to either of the above-mentioned persons would be legally binding upon defendant, in the instant case there is further testimony from which it may well be concluded that as a result of his interviews with Alderman Graham or Walter Morse, a Mr. Brandimore, who was the superintendent

---

* See 2 Comp. Laws 1929, § 8451 (Stat. Ann. § 17.186).—RE-PORTER.

of public works, had knowledge of plaintiff's accident and condition; and a month after the accident Dr. Henry, to whom at times the city's injured employees are referred, at the behest of the city made an examination of plaintiff's condition and reported back to Mr. Brandimore as follows: "This is to certify that Albert Graham has sufficiently recovered *from the injury to the stump of the left leg* to return to work."

And, upon examination by the deputy commissioner who first heard this case, the following record was made:

"*Q.* The attorney for the other side in answering that question that the employer had notice and knowledge of the accident within three months, said they had no knowledge.

"*A.* They had knowledge of it, yes, sir.

"*Q.* When did you tell him about this?

"*A.* I think it was told to them in November.

"*Q.* Who did you tell, did you tell somebody you jumped off this truck or did you tell somebody your leg was giving out on you?

"*A.* Relation board got the report.

"*Q.* Labor relations board?

"*A.* Mr. Schneeberger.

"*Mr. Campbell:* That is a committee in the Council, Mr. Commissioner."

In view of the foregoing, together with other portions of the record, it cannot be said that there is no competent testimony to sustain the finding of the department that defendant had notice and knowledge of plaintiff's injury as required by the workmen's compensation act.

The award from which this appeal was taken is affirmed, with costs to appellee.

CHANDLER, C. J., and BOYLES, STARR, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred. WIEST, J., did not sit.