KEPSEL *v.* McCREADY & SONS.

1. WORKMEN'S COMPENSATION—MASON—BACK INJURY—PROXIMATE CAUSE—FINDINGS OF APPEAL BOARD—EVIDENCE.

Finding of workmen's compensation appeal board . that back injury of mason resulted from causes and conditions characteristic of and peculiar to the business of the employer and arose out of and in the course of employment *held,* supported in the record (CL 1948, §§ 413.12, 417.1).

2. SAME—SCOPE OF REVIEW BY SUPREME COURT.

The scope of the review of the workmen's compensation appeal board's findings by the Supreme Court is limited to questions of law by the provision of the workmen's compensation act which also states that findings of fact shall, in the absence of fraud, be conclusive (CL 1948, § 413.12).

3. SAME—FINDINGS OF FACT BY APPEAL BOARD—SUPREME COURT.

Findings of fact by the workmen's compensation appeal board are conclusive upon the Supreme Court, if sustained by competent evidence (CL 1948, § 413.12).

4. SAME—PROXIMATE CAUSE—BURDEN OF PROOF.

A claimant for workmen's compensation who shows a reasonable relation of cause and effect between his work and the injury sustains the burden of proof cast upon him and is not obliged to exclude other possible or probable causes of the injury beyond a reasonable doubt (CL 1948, § 413.12).

DETHMERS, C. J., and REID and CARR, JJ., dissenting.

Appeal from Workmen's Compensation Appeal Board. Submitted January 10, 1956. (Docket No. 63, Calendar No. 46,653.) Decided April 2, 1956.

REFERENCES FOR POINTS IN HEADNOTES

[1] 58 Am Jur, Workmen's Compensation § 473.
[2] 58 Am Jur, Workmen's Compensation § 530.
[3] 58 Am Jur, Workmen's Compensation §§ 483, 518, 530.
[4] 58 Am Jur, Workmen's Compensation §§ 436, 437.

Robert G. Kepsel presented his claim for compensation from McCready & Sons, employer, and Michigan Mutual Liability Company, insurer, for injury to back. Award to plaintiff. Defendants appeal. Affirmed.

*Clare L. Gillett,* for plaintiff.

*L. J. Carey* and *James L. Schueler,* for defendants.

REID, J. (*dissenting*). On leave granted, defendants appeal from an order of the workmen's compensation appeal board granting an award for compensation to plaintiff. The plaintiff and defendant McCready & Sons were subject to compensation law, and the defendant Michigan Mutual Liability Company assumed the risk. The employer, McCready, had notice and knowledge of the alleged injury within the time required by statute. The only question involved is, did plaintiff sustain an injury arising out of and in the course of his employment as a bricklayer?

Plaintiff lives at Indian River, Michigan, is married, has 4 children over 16 years of age. The hearing on plaintiff's claim took place on April 12, 1955. Plaintiff started to work for defendant McCready about 1952. His work was laying brick and cement blocks and stone. On May 17, 1954, he with other employees was working on laying a foundation, using 12-inch blocks. Work on that particular job began around 10 o'clock in the forenoon. The injury is claimed to have occurred around 2 o'clock in the afternoon. Plaintiff had handled in the interim about 30 or 50 blocks. The employees started laying blocks all the way around to get the foundation rectangular, and were about all the way around the course. The footing was in front of the employees and the blocks were back of them, put there by a

helper. The blocks were stood up on end. Plaintiff testified,

"We would reach around and grab a block with one hand and swing it around, take hold of it with both hands, lift it over the line and lay it.

"Q. This application indicates that while doing this work you got a sharp pain in your back. How long had you been on the job before the onset of the pain?

"A. We started on that job somewhere around 10 o'clock and it happened somewhere around 2 o'clock in the afternoon."

At the onset of the pain, plaintiff testified that he was "running up a corner."

"Q. Do you remember specifically what you were doing at the moment that this onset of pain took place?

"A. I picked a block up and swung it around, and that is when I noticed it.

"Q. Your coworker was Joe McReynolds, another bricklayer?

"A. That is right.

"Q. In what region did you experience the pain?

"A. In the small of my back.

"Q. On the right or left side?

"A. The left side, pretty near in the center.

"Q. Where with reference to the belt line?

"A. Just about at the belt line.

"Q. What did you do when this pain came on?

"A. I rested just a minute or two and then I kept on working. I went on the fireplace then, where there were 8-inch blocks, a little lighter to handle.

"Q. Did you finish out the day?

"A. Yes, I did.

"Q. Who was the foreman on the job?

"A. I was.

"Q. That evening, how did your back feel?

"A. When I got home I couldn't hardly walk.

"*Q.* That night did you have any medical attention?

"*A.* My wife borrowed a heat lamp from the neighbors. She greased my back and put the heat lamp on it.

"*Q.* Did you work the next day?

"*A.* Yes, I did.

"*Q.* How did it feel the next day?

"*A.* It didn't feel very good. It was sore.

"*Q.* How long did you continue to work after that?

"*A.* I worked that week, and then I took a week off.     *     *     *

"*Q.* What was the conversation, if any, as to why you were taking it off?

"*A.* Well, the basement was just about finished and we didn't have too much work, so I asked them if I could take a week off and they said yes.

"*Q.* Was there any query as to why you wanted to take it off?

"*A.* Not exactly, only I figured it would do me some good to take it off.     *     *     *

"*Q.* This report that is filed says the last day worked was June 25, 1954.

"*A.* I think that is right.

"*Q.* Why did you stop working at that time?

"*A.* That is when my back got bothering me again."

Plaintiff testified that before going to Little Traverse hospital at Petoskey, on the Monday following June 25th, he had not seen a doctor until that Sunday when he saw Dr. Laird of Indian River to whom he gave no account of his back trouble. The doctor did not ask him what started it but examined his back and taped him up and he went home. Later the same day the neighbors called the same doctor and he came to plaintiff's house and gave him a shot in the arm.

When he entered Little Traverse hospital, Dr. Lilga examined him. Later Dr. Mateskon, a bone

specialist who was on vacation and didn't come back until plaintiff had been in the hospital 4 days, examined plaintiff, took X-rays and a myelogram. Plaintiff was in the hospital about 13 days, and took a lot of pills.

"*Q.* At the time of your release from the hospital, how did you feel?

"*A.* I didn't feel very good. I couldn't hardly walk.

"*Q.* Where was the particular source of your trouble?

"*A.* All the way from my back down to my toes.

"*Q.* In which leg?"

"*A.* My left leg."

After being released from the hospital, plaintiff stayed at home for 3 weeks or a month. Mr. Grant McCready came over to his place and told plaintiff he should try and see Dr. Fountain at Gaylord, who gave him some treatments, 4 or 5, which didn't seem to do much good. Plaintiff then went back to Little Traverse hospital where he was returned to the care of Dr. Mateskon.

"*Q.* (By the deputy commissioner) Did the doctor tell you what the results were of the second myelogram?

"*A.* He said it didn't show any ruptured disc, which he figured it would, but he still thought there was one, even though it didn't show."

Plaintiff went to work after the second myelogram was taken and thinks it was October 4th, at the same kind of work he formerly did. At the time of the hearing before the deputy commissioner, he was working for the same employer, except that he got laid off February 11th until the day before the hearing for the reason they didn't have any work. At the time of the hearing, plaintiff testified his back still bothered him.

The direct examination of plaintiff as a witness was conducted by the deputy commissioner. Attorney for defendants cross-examined plaintiff as a witness.

The appeal board found as a fact that no accidental or fortuitous event occurred on May 17, 1954, but that plaintiff's injury was to be compensated under part 7 of the workmen's compensation act. Plaintiff testified in addition to the occasions of suffering pain heretofore spoken of, that after he had been out a good share of the day on a fishing trip with no particular exertion, when he came back he had on that very same day a very sharp pain in his back, and likewise while he was staying in Florida, for a part vacation period, he had a somewhat similar attack in Florida. There was no showing that plaintiff's condition was not due to an ordinary disease of life to which the public is generally exposed outside of plaintiff's employment. At least 4 doctors examined and treated plaintiff but they were not produced as witnesses.

Defendants claim that it is entirely possible that plaintiff had an exacerbation of a pre-existing arthritis, or a tubercular spine or a cancerous condition. Until it is shown what the condition is, no one can say what caused it.

Section 1, subparagraph(c) of part 7 of the workmen's compensation act (CL 1948, § 417.1 [Stat. Ann 1950 Rev § 17.220] ) provides, in part, as follows:

"The term 'personal injury' shall include a disease or disability which is due to causes and conditions which are characteristic of and peculiar to the business of the employer and which arises out of and in the course of the employment. Ordinary diseases of life to which the public is generally exposed outside of the employment shall not be compensable."

We find no competent evidence of what the condition was, of which plaintiff complains. It cannot be said that the disability of which plaintiff complains is due to causes and conditions which are characteristic of and peculiar to the business of the employer. See *May* v. *A. H. Powell Lumber* Co., 335 Mich 420.

The award should be reversed. Costs to defendants.

DETHMERS, C. J., and CARR, J., concurred with REID, J.

SMITH, J. The working conditions out of which claimant's injuries grew are described in the words of the appeal board as follows:

"His regular and customary work required that he perform heavy and strenuous duties, that he lift heavy articles and that in doing certain masonry work he reach around behind him, grab with 1 hand a cement block weighing as much as 60 pounds, swing it around in front of him and then with 2 hands lift and lay it in place. This was an unusual procedure performed in an awkward and difficult position. It was regular and customary work which required very strenuous and unusual physical exertion. Plaintiff's work presented a substantial hazard of back injury which was far in excess of that attending employment in general. The work described caused the back condition which incapacitated plaintiff after June 25, 1954, from doing the work he was performing on and prior to May 17, 1954. The causal connection is clear. The injury and disability resulted from causes and conditions characteristic of and peculiar to the business of the employer and arose out of and in the course of employment."

The facts, above recited, have support in the record, though the support is not as ample or artistic as it might have been. The evidence is scant. The

claimant did not employ counsel to represent him. He simply appeared at the hearing with his wife, and without doctors, and told his story: of his coming home (the day of the injury) in such condition that "I couldn't hardly walk," of his wife's efforts to ease the pain, by borrowing "a heat lamp from the neighbors" and of greasing his back and putting "the heat lamp on it." The home treatments continued, apparently without success. "I tried to talk him out of going back to work, but I couldn't. So he went to work the next day, and every night that week I put the heat lamp on. That is all I could do for him. He wouldn't stay home from work." Husband and wife testified, without objection, of consulting various doctors, and what was said and what was done by them. Dr. Mateskon, the bone specialist, thought there was a ruptured disc: "He said it (the second myelogram) didn't show any ruptured disc, which he figured it would, but he still thought there was one, even though it didn't show."

It was conceded, in fact, at the hearing, that plaintiff was suffering from back trouble and that hospitalization and medical care were necessary. The issue was whether or not he sustained his injury on the job. The commission concluded that he had and it is my opinion that we are bound by its determination of this issue. As we said in *Shaw* v. *General Motors Corporation,* 320 Mich 338, 345:

"The scope of the review by this Court in cases of this character is limited. CL 1929, § 8451, as amended by PA 1943, No 245 (CLS 1945, § 8451 [Stat Ann 1947 Cum Supp § 17.186]),* provides, in part, as follows:

" 'The findings of fact made by the compensation commission acting within its powers, shall, in the absence of fraud, be conclusive, but the Supreme Court shall have power to review questions of law

---

* See CL 1948, § 413.12 (Stat Ann 1950 Rev § 17.186).—Reporter.

involved in any final decision or determination of said compensation commission.'

"Under the provisions of the workmen's compensation law the department of labor and industry is charged with the duty of considering testimony offered by the parties, determining facts therefrom, and drawing legitimate inferences from the facts found to be established by competent proofs. Such findings and inferences, if supported by competent evidence, must be accepted by this Court. *Graham* v. *City of Lansing,* 303 Mich 98; *Wolanin* v. *Chrysler Corp.,* 304 Mich 164; *Holloway* v. *Ideal Seating Co.,* 313 Mich 267. Defendant's claim that plaintiff failed to establish a compensable disability cannot be sustained."

Defendants, however, urge upon us a host of possibilities. As Mr. Justice REID points out, they "claim that it is entirely possible that plaintiff had an exacerbation of a pre-existing arthritis, or a tubercular spine or a cancerous condition." The difficulty with the argument is that it is utterly without foundation. There is nothing in the record supporting the possibility of arthritis, tuberculosis, or cancer. Is a claimant to be required to negative all ailments, diseases, and abnormalities which, "it is entirely possible," could cause the observed condition? Such a burden is without precedent and without justification. It is impossible to carry, because no matter how lengthy the ailments disproved by plaintiff, the imagination and ingenuity of counsel on appeal, can, without doubt, find others which, "it is entirely possible," could have caused the condition then existing. If plaintiff is required to prove freedom from cancer, why not also freedom from multiple sclerosis? Did he overlook leprosy? Beri-beri? Where will this stop?

The compensation act contemplates no such absurdity. Its requirements are simple: The claim-

ant must show a reasonable relation of cause and effect between work and injury. Other possible or probable causes of the injury do not have to be excluded beyond doubt. The argument thus made by defendant and accepted by my Brother has never heretofore, to my knowledge, been accepted as a principle of compensation law and counsel cites no pertinent case to us so holding. The authority *per contra* is overwhelming. A very few cases will suffice.

" 'Compensation claimant must connect disability with accident by legal proof and with reasonable certainty, but need not produce such proof as would exclude entirely any other theory or hypothesis as to cause of disability.' " *Dilley* v. *Phillips Petroleum Co.* (La App), 36 So2d 59, 61.

"With respect to appellant's contention that the employee's total disability is the result of some cause unrelated to the accident, our courts have held that where this defense is asserted, the burden of establishing it is upon the one who alleges it." *Lilly* v. *Todd,* 15 NJ Super 1, 6 (83 A2d 21).

The supreme court of Arizona is in accord:

"But where the accident is admitted, the disability is proved, there is evidence of some compensable injury causing the disability, and nothing in the evidence suggesting any noncompensable cause, the commission may not deny compensation on the theory the disability was caused by some unknown condition." *Krupp* v. *J. C. Penney Company,* 51 Ariz 228 (75 P2d 692).

We could multiply citations but we will forbear. We remind ourselves again that our function here is not one of fact finding. That has been done for us. The commission finds the injury and the causation. It has ample grounds for so doing. Our words in *Underwood* v. *National Motor Castings Division,*

*Campbell, Wyant & Cannon Foundry Company,* 329 Mich 273, 276, 277, are apt and applicable:

"The commission found that plaintiff's work presented a substantial hazard of back injury which was far in excess of that attending employment in general. There is competent testimony to support this conclusion. The bending and twisting that plaintiff was required to do in order to place the cores in the oven was a part of her job and peculiar to defendant's business. In the absence of fraud the findings of the commission are conclusive."

The award is affirmed. Costs to appellee.

SHARPE, BOYLES, KELLY, and BLACK, JJ., concurred with SMITH, J.