259 P.2d 547

NICHOLSON v. INDUSTRIAL COMMISSION.

No. 5759.

Supreme Court of Arizona.

July 13, 1953.

Townsend & Jenckes, Phoenix, for peti-·tioner.

Perry M. Ling, Robert E. Yount, Robert W. Pickrell, and Donald J. Morgan, Phoenix, of counsel, for respondent, Industrial Commission.

LA PRADE, Justice.

This proceeding calls for a review of an award of the Industrial Commission of Arizona, refusing to grant compensation for the death of an employee whose

employer was subject to the provisions of the Workmen's Compensation Act, A.C.A.1939, § 56–901 et seq., and insured thereunder. The claim for compensation was presented by the surviving widow.

The deceased employee, Floyd E. Nicholson, was employed by the Christenson Construction Co., Inc., as a "grizzly man" in its operation in quarrying and crushing building material called "tuff", used in the manufacture of building blocks. This mining operation was carried on out on the open desert near Apache Junction, east of Mesa, Arizona. The tuff material, after being "sized" at the grizzly, was crushed to a certain fineness and then conveyed by a belt conveyor up to the top of a loading platform from which it was taken by trucks that were driven under the platform and loaded through doors which permitted the material to drop down into the trucks. The area under the platform into which the trucks were driven was about 11 feet wide and 29 feet long. The ceiling of the platform was about 12 feet above the ground and was supported by railroad rails set crosswise on top of which heavy planks were laid. About midmorning of the day of the accident one of the rails in the ceiling gave way on account of the weight of materials superimposed upon it.

The structural defect was temporarily shored up but was considered of such consequence that it was deemed advisable not to place any more material on the platform until adequate repairs could be made. The temporary repair was completed about 50 minutes before noontime, at which time the employees were told not to return in the afternoon for work but to return the following morning, giving time to repair the platform. Due to the location of the premises, there being no restaurants nearby, the employees were accustomed to bring their lunches with them and which, with the knowledge and consent of the employer, they customarily ate in the tunnel area underneath the loading platform, which furnished the only shade in this desert area during a period of extreme heat (date of accident July 24th). About 20 minutes after the noon hour, deceased and other workmen were eating their lunch under the platform and while so engaged the roof collapsed covering them with great quantities of material—so much, in fact, that three of them lost their lives.

The Commission, in view of the fact that the workday had unexpectedly come to an end at the noon hour, coupled with a layoff order, determined that the relationship of employer and employee had ceased at 12 o'clock sharp, and that the injury and resulting death did not arise out of and in the course of the employment and hence was not compensable. The correctness of this determination presents the occasion for this review.

■■ That the deceased lost his life by accident no one questions, but did it arise out of his employment and in the course of his employment? The words "in course

of" relate to the time, place and circumstances of the accident. The words "arise out of" refer to the origin of the cause and are descriptive of its character. One text-writer has said:

> "Reams have been written undertaking to define and apply the simple, expressive requirement of the statutes that, in order to be entitled to compensation, an employee must have received 'a personal injury by accident arising out of and in the course of his employment'". Schneider, Workmen's Compensation Law, Vol. 6, p. 4.

Mr. Arthur Larson, of the Wisconsin bar, and Professor of Law at Cornell Law School, in his recent work entitled "The Law of Workmen's Compensation" (1952), Vol. 1, p. 42, says:

> "Few groups of statutory words in the history of law have had to bear the weight of such a mountain of interpretation as has been heaped upon this slender foundation."

With these observations we must concur. The words "arising out of" and "in the course of" appear in practically all of the Workmen's Compensation Acts in the United States, and constitute the basic coverage formula. Perhaps it is not amiss to surmise that it is out of the voluminous interpretations and definitions that confusion has arisen, rather than in the simple and expressive words themselves.

All the cases and text-writers on the subject acknowledge that categorical tests or rules have not yet been invented or stated which can be applied in this ever-changing industrial world to determine whether any particular accident arises out of and in the course of employment. This court early recognized that each case must be determined on its own peculiar facts before any attempt is made to apply tests. Ocean Accident & Guarantee Corp. v. Industrial Comm., 1927, 32 Ariz. 265, 257 P. 641, 643. We feel that any attempt to determine whether a particular injury arises out of and in the course of employment should only be made by a judging body which is constantly aware of the basic concept of the nature and philosophy back of workmen's compensation. This court, from the inception of the Workmen's Compensation Act in this state, when called upon to interpret its terms, has consistently recognized the act to be remedial and that its terms "should be given a liberal construction, with a view of effectuating their evident purpose of placing the burden of injury and death upon industry". Ocean Accident & Guarantee Corp., supra; Krupp v. J. C. Penney Co., 1938, 51 Ariz. 228, 75 P.2d 692; Mountain States Tel. Co. v. Industrial Commission, 1944, 61 Ariz. 436, 150 P.2d 355; Melendez v. Johns, 1938, 51 Ariz. 331, 76 P.2d 1163. (See dissenting opinion J. Lockwood for excellent review of background of our law and the evils which it was designed to remedy.)

Having early recourse to the factual situation of each case has led some legal

minds to conclude that compensation law has grown up around factual rather than legal classifications, and

"* * * as more and more generous expansions of coverage appear in the cases, that a large part of compensation law is not law at all but indiscriminate and legally-unpredictable sympathy for the disabled employee and his family." Preface to Vol. 1, Larson, supra.

■ A liberal construction is not synonymous with a generous interpretation. To interpret liberally envisions an approach with an open and broad mind not circumscribed by strictures or predilection, whereas a generous interpretation suggests freehandedness—largess. It is not in the power of this court to "give" but it definitely is its duty to interpret the law to insure that what the law gives is not withheld. With these observations in mind we will proceed to consider what we consider the law. to be, as applicable to the instant fact situation.

■ Generally injuries incurred by the employee while leaving the premises collecting pay or getting his clothes or tools, within a reasonable time after termination of the employment, or within the course of employment, are normally incidents of the employment relation. There are numerous cases holding that compensation coverage is not automatically and instantly terminated by the firing or quitting of the employee. The employee is deemed to be within the course of employment for a reasonable period while he winds up his affairs and leaves the premises.[1] The difficulty, of course, is what is a reasonable period? Several cases have held the act inapplicable on the ground the employee loitered too long on the premises before leaving, and hence not in the course of employment.[2]

1. Anderson v. Hotel Cataract, 1945, 70 S. D. 376, 17 N.W.2d 913. Employee assaulted while going to locker to get coat preparatory to abandoning job. Kiernan v. Friestedt Underpinning Co., 1916, 171 App.Div. 539, 157 N.Y.S. 900. Regular employee on reporting to work was told that he was not wanted because of want of sobriety; on starting to leave via a subway, tripped and fell, receiving injuries. Zygmuntowicz v. American Steel & Wire Co., 1922, 240 Mass. 421, 134 N. E. 385. Employee, after being discharged, was assaulted by employer's watchman at the time when employee was on the premises gathering up his effects and securing a brass check which enabled him to leave the premises. Employee's tort action denied, on the theory that employee's sole remedy was under the Workmen's Compensation Act in that assault arose out of and in the course of employment.

2. National Biscuit Co. v. Litzky, 6 Cir., 1927, 22 F.2d 939, 56 A.L.R. 853. Employee discharged at 11:30 a.m., went to employer's lunch room, ate lunch, then while leaving the premises by elevator was injured, two hours and twenty minutes after discharge. Adams v. Uvalde Asphalt Paving Company, 1923, 205 App. Div. 784, 200 N.Y.S. 886. One dissent. Employee laid off at 11:30 a.m. for the day but remained at the plant, ate lunch there, and was injured about 1:50 p.m. as he was making preparation for washing himself, preparatory to leaving.

■ Lunching on the premises is generally recognized to be within the course of employment when the same is customary and convenient for the employee. In Goodyear Aircraft Corp. v. Industrial Commission, 62 Ariz. 398, 158 P.2d 511, we noted there are many decisions to the effect that getting fresh air, smoking, resting, eating food or ice cream, quenching thirst by water, beer or wine, taking a bath, use of telephone or toilet or other facilities, washing, gathering up working clothes, and transportation to and from work, are treated as arising out of the employment. In this latter case we held that injuries received by an exploding Coca-Cola bottle being prepared for consumption by placing it on ice, were compensable and arose out of the employment. Unquestionably in the instant case compensation would have been payable had it been contemplated that the employee would resume his employment after the lunch period. What difference should it make that there was to be a cessation of work until the following morning? This employee was not permanently fired or discharged, for his regular work was to resume on the following morning. He had earned his right to sustenance and to recoup his vigor by virtue of the labors that he had expended in his employer's behalf during the morning. In our judgment the taking of food on the coming of the noon hour was to be expected and necessary, and was an incident of the employment, especially where it was partaken of in a relatively few minutes after the lay-off order. In no sense of the word should it be held that the employee was loitering and engaged in an endeavor separate and apart from his employment. To determine that this intervening lay-off had the effect of destroying the full relationship of employer and employee, under these circumstances, would be wholly unrealistic and harsh under the circumstances. It is not entitled to such emphasis.

■ We are in accord with those cases holding that an employee has a reasonable length of time within which to collect his pay, gather up his clothes or tools, wash and clean up preparatory to leaving the premises, and while so engaged remains in the course of his employment. We see nothing in the principle to distinguish this case from the holding in those cases, and place no importance on the intervening lay-off order.

We conclude that the deceased employee lost his life by accident arising out of and in the course of his employment.

It is ordered that the award be set aside.

STANFORD, C. J., and PHELPS, UDALL, and WINDES, JJ., concurring.