449 P.2d 291

**CITY OF PHOENIX, Petitioner,**

v.

**The INDUSTRIAL COMMISSION of Arizona and John N. Adams, Respondents.**

**No. 9440–PR.**

Supreme Court of Arizona.

In Banc.

Jan. 16, 1969.

Rehearing Denied Feb. 18, 1969.

O'Connor, Cavanagh, Anderson, West-over, Killingsworth & Beshears by Ralph E. Mahowald, Jr., Phoenix, for petitioner.

Robert D. Steckner, Phoenix, Chief Counsel, for respondent The Industrial Commission of Arizona.

McFARLAND, Justice:

This case is before us on a petition by the City of Phoenix for review of a decision of the Court of Appeals, 8 Ariz.App. 193, 444 P.2d 750, which affirmed an award of the Industrial Commission of Arizona denying compensation to the employee and the petitioner. Decision of the Court of Appeals affirmed.

It should be noted that the claimant, named as respondent here, one John Adams, vigorously opposes any reimbursement under our Workmens' Compensation Act. The facts are as follows:

On June 16, 1966, John N. Adams, an employee of the City of Phoenix, was injured in a fall in an elevator located in the Municipal Building of the City of Phoenix at 251 West Washington Street. He was employed by the City of Phoenix as a civil engineer. His offices were located on the 7th floor of the Municipal Building.

Adams had been afflicted with an arthritic condition for approximately twenty years prior to his injury, and for approximately five years prior to his injury he had been so badly crippled that he required the assistance of crutches to ambulate. Because of this it was his custom to go to the office at 7:30 a. m., prior to the 8:00 o'clock rush, and to leave the building at approximately 4:30 p. m., prior to the 5:00 o'clock rush. Co-employees of Adams assisted him in numerous ways, such as helping him out of his chair, and going with him when he left work for the day to bring his car around to the office building basement so that he would not have to walk to the parking lot.

On the day of the accident Adams left work at approximately 4:30 p. m. He rode down the elevator from the 7th floor to the first floor where the other passenger got off, then rode the elevator alone to the basement. As he was leaving the elevator, something occurred in the closing of the doors to knock him off balance and he fell backwards into the elevator and broke his leg. The elevator went up to the 5th floor where Adams was discovered by another employee of the City of Phoenix.

Adams was unable to say exactly what caused him to fall, although he did state that on other occasions he had had the doors of another of the numbered elevators close on him suddenly. He testified that he had never before had difficulty with the particular elevator òn which he was riding that night, but it seemed to him then that the doors closed suddenly. Adams testified that at the time the accident occurred he had completed his work for the day and was on his way home.

An employee is covered by our Workmens' Compensation Act if he is injured by accident arising out of and in the course of employment. A.R.S. § 23–1021. We have defined these elements in Mc-Campbell v. Benevolent & Protective Order of Elks, No. 536, 71 Ariz. 244, 226 P.2d 147.

"An injury or accident occurs in the course of his employment if the employee is injured while he is doing what a man so employed may reasonably do within a time during which he is employed and at a place where he may reasonably be during that time. 'The words "in the course of" refers to the time, place, and circumstances under which it occurred.' Goodyear Aircraft Corp. v. Gilbert, [65 Ariz. 379, 181 P.2d 626] supra; Thomas v. Industrial Commission, 54 Ariz. 420, 96 P.2d 407.

"We believe a fair interpretation of the term 'arising out of' to be that the cause producing the accident must flow from a source within the employment. That source must have its situs in some risk inherent in the employment or incidental to the discharge of the duties thereof. In other words there must be some causal relation between the employment and the injury. Garrett v. Gadsden Cooperage Co., 209 Ala. 223, 96 So. 188. If an employee is injured by accident while engaged in the performance of some duty for an employer reasonably contemplated in the employment, regardless of the cause of the accident, it must be considered as an accident during the course of and arising out of such employment due to a risk inherent in the employment or incidental thereto. The risk or danger to which the employee may be subjected may be one existing independently, over which the employer has no control, and for which he is in no wise responsible. It is enough if the duties of the employee require him to subject himself to such risk or danger. The accident caused thereby arises out of the employment as much so as if the employer were responsible for such risk or danger.

Beem v. H. D. Lee Mercantile Co., 337 Mo. 114, 85 S.W.2d 441, 100 A.L.R. 1044; Meyer v. Royalton Oil Co., 167 Minn. 515, 208 N.W. 645."

A corollary to these elements is the well-established rule that "Our workmen's compensation act, like those of most jurisdictions, was not intended to give protection to workers going to and from work." Malinski v. Industrial Commission, 103 Ariz. 213, 439 P.2d 485. There are exceptions, such as where the employee's actual services commence when he leaves home and continue until his return home, Strauss. v. Industrial Commission, 73 Ariz. 285, 240 P.2d 550; where the employee is performing a special mission for his employer, Cavness v. Industrial Commission, 74 Ariz. 27, 243 P.2d 459; and where the employer furnishes transportation or compensates the employee for his travel time to and from work, Serrano v. Industrial Commission, 75 Ariz. 326, 256 P.2d 709.

The petitioner here however urges upon this Court the so-called "on premises" rule in that it seeks compensation coverage based on the bare fact of Adams's physical presence in his employer's building, even though he was admittedly going home. Such rule is actually an exception to and an incursion into the "going and coming" rule, and has been adopted in varying degrees, and in many cases greatly extended, in a number of jurisdictions. See Schneider, Workmen's Compensation Text, §§ 1712 et seq. (Permanent Ed.). While this Court has never rejected the "on premises" exception in so many words, in Cavness v. Industrial Commission, supra, we stated:

"Protection to workmen and their dependents is limited to injuries by accident arising out of and in the course of employment and we recognize that in no event must the workmen's compensation law be converted into a general health and accident coverage." 74 Ariz. 27, 30, 243 P.2d 459, 462.

See also Strauss v. Industrial Commission, supra.

Each case must be decided on its individual facts, and within the framework of the definitions set forth in the McCampbell case, supra. There is no "rule of thumb" that an injury is compensable merely because it was incurred between the hours of eight to five or occurred within the linear measurements of the employer's premises. The circumstances must be such that the activity engaged in, at the time of the accident, is an incident of the employment. This was well stated in a Michigan case, a jurisdiction which rejected the categorical doctrine of the "on premise" exception and reaffirmed the early Massachusetts reasoning of In re McNicol, 215 Mass. 497, 102 N.E. 697, L.R.A.1916A, 306:

"Plaintiff's injury did not arise out of and in the course of his employment and for that reason the award should be set aside. The accident occurred after plaintiff's work for his employer was ended for the day. He was on his way home after leaving the place of his work and had no further work or duties to perform for his employer on the day he was injured. This case is analogous to the rule laid down by this Court in Pearce v. Michigan Home and Training School, 231 Mich. 536, 204 N.W. 699, and many other decisions of this Court denying compensation on the ground that there was no causal connection between the injury and the employment. This Court has consistently held that an injury to an employee while merely on his way to or from work, without any causal connection between his injury and his work, and without any duty to perform at that time for the employer, does not arise out of and in the course of the employment. * * *

"In the McNicol case, decided September 12, 1913, that court said:

'In order that there may be recovery the injury must both arise out of and also be received in the course of the employment. Neither alone is enough.

'It is not easy nor necessary to the determination of the case at bar to give a comprehensive definition of these words which shall accurately include all cases embraced within the act and with precision exclude those outside its terms. It is sufficient to say that an injury is received "in the course of" the employment when it comes while the workman is doing the duty which he is employed to perform. It arises "out of" the employment, when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises "out of" the employment. But it excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workmen would have been equally exposed apart from the employment. The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment and to have flowed from that source as a rational consequence.'

"The test thus applied in Massachusetts is still followed in this State. * * *" Daniel v. Murray Corporation of America, 326 Mich. 1, 39 N.W.2d 229 at 230–231.

This principle of relationship between the particular activities being engaged in and the duties of employment is the thread which runs through the exceptions to the "going and coming" rule. This was also

the basis for the decision in Nicholson v. Industrial Commission, 76 Ariz. 105, 259 P.2d 547, not a "coming and going" case, but one which the petitioner cites as approving the "on premises" exception.

"Lunching on the premises is generally recognized to be within the course of employment when the same is customary and convenient for the employee. In Goodyear Aircraft Corp. v. Industrial Commission, 62 Ariz. 398, 158 P.2d 511, we noted there are many decisions to the effect that getting fresh air, smoking, resting, eating food or ice cream, quenching thirst by water, beer or wine, taking a bath, use of telephone or toilet or other facilities, washing, gathering up working clothes, and transportation to and from work, are treated as arising out of the employment. In this latter case we held that injuries received by an exploding Coca-Cola bottle being prepared for consumption by placing it on ice, were compensable and arose out of the employment. Unquestionably in the instant case compensation would have been payable had it been contemplated that the employee would resume his employment after the lunch period. What difference should it make that there was to be a cessation of work until the following morning? This employee was not permanently fired or discharged, for his regular work was to resume on the following morning. He had earned his right to sustenance and to recoup his vigor by virtue of the labors that he had expended in his employer's behalf during the morning. *In our judgment the taking of food on the coming of the noon hour was to be expected and necessary, and was an incident of the employment,* especially where it was partaken of in a relatively few minutes after the lay-off order. In no sense of the word should it be held that the employee was loitering and engaged in an endeavor separate and apart from his employment." 76 Ariz. at p. 110, 259 P.2d at p. 550. (Emphasis added.)

The petitioner interprets certain language contained in that opinion, such as "Generally injuries incurred by the employee while leaving the premises * * * are normally incidents of the employment relation" and "The employee is deemed to be within the course of employment for a reasonable period while he winds up his affairs and leaves the premises," as an adoption of the "on premise" exception. This is not so, as is explained in the subsequent language of the Court:

"We are in accord with those cases holding that an employee has a reasonable length of time within which to collect his pay, gather up his clothes or tools, wash and clean up *preparatory* to leaving the premises, and while so engaged remains in the course of his employment. * * *" 76 Ariz. at p. 110, 259 P.2d at p. 550. (Emphasis added.)

When the employee actually embarks on his homeward journey is not limited by time and place, but is a question of fact dependent upon the circumstances of each individual case and is to be determined by the trier of the facts. Here, Adams finished his day's work, left his office and descended on the elevator to the basement in order to obtain his car for the drive home. He was going home, and the Industrial Commission so found as a matter of fact. He was not performing any duties for his employer nor engaging in any activity incidental to his employment, and the injuries sustained are not compensable as arising out of and in the course of his employment.

The petitioner has also urged that the use of an elevator together with Mr. Adams's unfortunate arthritic condition comprised a "special risk" and cites 1 Larson, Workmen's Compensation Law 226–227 as authority that Arizona has "narrowed the going-and-coming premises rule judicially" requiring a showing of a "special risk" in order to obtain coverage under our workmen's compensation laws. We need not comment on this view because, in today's age of high-rise office buildings and apart-

ments, the use of an elevator, per se, is hardly a special risk or hazard of office employment. Further, the risk referred to in the Arizona Constitution is a necessary risk of, or inherent in, the nature of the *employment*, Ariz.Const. Art. 18, § 8, A.R.S., not in the physical condition of the employee.

For these reasons the award of The Industrial Commission denying compensation is affirmed.

UDALL, C. J., LOCKWOOD, V. C. J., and STRUCKMEYER and HAYS, JJ., concur.