490 P.2d 870

**Deborah PETERSON, Widow, Petitioner,**

**In the Matter of Richard L. Peterson, Deceased,**

**v.**

**The INDUSTRIAL COMMISSION of Arizona, Respondent,**

**Paul Bimmerman Company, Respondent Employer,**

**State Compensation Fund, Repondent Carrier.**

**No. I CA–IC 620.**

Court of Appeals of Arizona, Division 1.

Nov. 22, 1971.

Rehearing Denied Dec. 28, 1971.

Review Denied Feb. 8, 1972.

Bernard I. Rabinovitz, Tucson, for petitioner.

William C. Wahl, Jr., Chief Counsel, The Industrial Comm. of Ariz., Phoenix, for respondent.

Robert K. Park, Chief Counsel, State Compensation Fund by Harlan J. Crossman, Phoenix, for respondents employer and carrier.

HATHAWAY, Judge.

We are asked on this Petition for Writ of Certiorari to set aside an award of The Industrial Commission entered 20 January 1971, denying death benefits to the widow

and dependents of Richard L. Peterson. We must decide whether decedent's death was caused by an "accident arising out of and in the course of his employment," A. R.S. § 23–1021, and whether evidence of decedent's intoxication should bar recovery.

Decedent was employed by the respondent employer, a feed miller and supplier, in Willcox, Arizona. On 25 November 1969 he was dispatched to Patagonia, Arizona, to sell feed to farmers and ranchers in that area. He telephoned his office that evening requesting a price quotation and indicated that he would stay overnight in Patagonia to contact prospective buyers he had been unable to see that day. His employer testified that such overnight stays were not unusual during certain seasons of the year. On such occasions decedent was reimbursed for his expenses incurred in lodging, travel and meals in addition to a monthly salary. He did not receive commissions on his sales.

The evidence presented indicated that the decedent spent from approximately 6:00 p. m. to 8:00 p. m. and 10:30 p. m. to 1:00 a. m. that night in a combination bar and cafe in Patagonia eating, drinking, conversing and playing pool. When the premises closed at 1:00 a. m., the morning of November 26th, he left in the company of fellow patrons to take some gasoline to a stalled vehicle. The proprietress of the rooming house in which he stayed testified that she did not see his pick-up truck in the parking lot when she took medication at 3:00 a. m. She did see the truck in the lot at 6:30 a. m. that morning when she left the house.

At approximately noon on November 26th the body of the decedent was found by the rooming house proprietress with his head caught between two metal slats of the bed headboard and his feet dangling over the side of the bed. The autopsy report concluded the death was accidental setting forth: "The cause of death was suffocation, the result of pressure on the right neck." Laboratory analysis disclosed a blood alcohol content of .190 per cent.

The Commission upheld the finding of the hearing officer denying benefits on the basis that the "applicant did not suffer death as a result of an accident arising out of and in the course of his employment * * *."

Respondents first contend that there was a finding, "if not in fact, inferentially, that the deceased's state of intoxication was sufficient to take him out of the course of employment." The pertinent findings state:

"5. That decedent, the evening of November 25, 1969, spent time at a bar at Patagonia where he engaged in drinking highballs and playing pool, that decedent was not considered intoxicated by those witnesses who last saw the decedent alive, that decedent left the bar at 1:00 a. m. on November 26, 1969 to take a man to this man's car with gasoline.

\* \* \* \* \* \*

9. That the decedent had a blood alcohol reading at the time of death of .190 which was not indicative of his being in a deep alcoholic stupor."

We cannot agree that the findings or the evidence of intoxication establish a sufficient basis to exclude benefits. We cannot read into the findings nor find in the testimony any evidence that the decedent's intoxication in any way caused or even contributed to his death. The barmaid testified that in her opinion when he left, "I would say definitely he was not drunk." Sergeant Scott R. Chesnut, of the Department of Public Safety, Criminal Investigations Division, a recognized expert by the hearing officer, testified that .19 per cent, "would cause a lessening of pain threshold, would release inhibitions. The individual would be conscious and his memory might be lessened to a certain extent. The individual would be in physical control of himself. He would be conscious." Doctor Zenas Noon, who performed the autopsy, admitted that .15 per cent blood alcohol is "medical intoxication, * * * but certainly .15 would not be enough intoxication to cause death." The body was examined

at the scene by Dr. Delmar Mock who said .19 per cent would not put a person into a deep alcoholic stupor, which would require a .25 per cent or more.

Our consideration of this question is guided by the Arizona Supreme Court which has held that the compensation act of this state does not make intoxication or careless or negligent acts a bar to compensation. A person must be drunk to such an extent that he can no longer follow his employment. Ortega v. Ed Horrell & Son, 89 Ariz. 370, 362 P.2d 744 (1961); King v. Alabam's Freight Co., 38 Ariz. 205, 298 P. 634 (1931). The intoxication must have reached an extent to be tantamount to abandonment of employment. Simpkins v. State Banking Department, 45 Ariz. 186, 42 P.2d 47 (1935).

Further, the testimony was unanimous that death was accidental. Sergeant Chesnut whose self-described specialty is "investigation of violent death" reduplicated the accident. In his opinion the cause of death was suffocation by strangulation, the bed headboard being the instrument causing death. He gave the following description of what occurred:

"Otherwise, when the deceased had rolled over on the bed and restricted his neck, the oxygen flow was cut off to his brain. The deceased may or may not have been alive at the time his feet hit the floor. However, if he had been alive, the condition would have been such that he would not have been able to do anything to help himself * * *. However, once the decedent rolled over in bed and restricted his neck, actually placed the weight of his body, two hundred pounds, on that one small area he couldn't help himself. He actually and very possibly was conscious for a few minutes and was aware of what was happening, but was unable to do anything about it."

Dr. Mock had "no difficulty in removing the [decedent's] head" from between the iron slats. Investigating Officer Ray Lambertson, who had the same hat size as decedent, found it easy to "put my head through the bars of the head support * * * as long as I lay straight back, * * *" Considering the above authority and testimony we find that the decedent's state of intoxication was not sufficient to take him out of the course of his employment and did not cause his death. In this respect respondent's particular reliance on Sherrill & LaFollette v. Herring, 78 Ariz. 332, 279 P.2d 907 (1955) and Justice Udall's dissenting opinion therein is misplaced as the court there was concerned with route and time deviation of regular employees.

■ Having held that recovery, in the instant case, is not precluded by evidence of decedent's intoxication we must next determine whether a traveling employee may suffer an accident arising out of and within the course of his employment while sleeping. "Arising out of" is defined in Royall v. Industrial Commission, 106 Ariz. 346, 349, 476 P.2d 156, 159 (1970) to be:

"'[T]hat the cause producing the accident must flow from a source within the employment. That source must have its situs in some risk inherent in the employment or incidental to the discharge of the duties thereof. In other words there must be some causal relation between the employment and the injury.'"

"In the course of" refers to the time, place and circumstances under which the accident occurred. Royall v. Industrial Commission, 106 Ariz. at 349, 476 P.2d at 159. As noted in McCampbell v. Benevolent & Protective Order of Elks, 71 Ariz. 244, 226 P.2d 147 (1950) the difficulty lies in applying the above principles of law with the facts especially where the accident is not due to a risk inherent in the nature of the employment but is merely incidental thereto. The difficulty is enhanced in this case by the absence of judicial precedent in this jurisdiction on the precise issue.

The general rule is stated in 1 A. Larson, Law of Workmen's Compensation § 25, at 443 (1968):

"Employees whose work entails travel away from the employer's premises are held in the majority of jurisdictions to

be within the course of their employment continuously during the trip, except when a distinct departure on a personal errand is shown. Thus, injuries arising out of the necessity of sleeping in hotels or eating in restaurants away from home are usually held compensable."

Respondents, however, rely on Edwards v. Industrial Commission, 94 Ariz. 342, 385 P.2d 219 (1963) in contending that the decedent was not covered by compensation insurance. There, the deceased employee was required to stay overnight in Prescott, Arizona. He drowned in the motel swimming pool at which he was staying. The Arizona Supreme Court in finding the accident noncompensable, said:

"The fact that an employee is away from the office does not affect his right to compensation, providing he is 'on the job' during the time he is away. [Citation omitted]. But the injury itself must in some way occur in the course of employment.

\* \* \* \* \* \*

Simply stated, there must be a causal connection between one's employment and the accidental death or injury sustained before compensation can be made. The only connection between decedent's employment and his accident is that his assignment took him to Prescott and necessitated his finding overnight lodging there. More is required under the industrial compensation laws of this state as we have consistently interpreted them. Recreational activity of the kind undertaken by the decedent cannot be said to be an incident to his work or in any way associated with it."

We believe in the instant case that "more" is shown. The decedent was not engaged in a recreational activity. His employment took him to Patagonia where he often stayed overnight and the cause of death was directly related to his physical act of sleeping. An accident has been said to occur in the course of employment if the employee is injured while he is doing what a man so employed may reasonably do within a time during which he is employed and at a place where he may reasonably be during that time. McCampbell v. Benevolent & Protective Order of Elks, supra. We believe a reasonable period of sleep is necessarily incidental to the work of a traveling employee required to take overnight lodging away from his home. This case most clearly resembles those cases cited by petitioner awarding dependents benefits where a traveling employee dies as a result of fire or asphyxiation in a hotel or motel where he is staying while on a business trip. See 1 A. Larson, Law of Workmen's Compensation §§ 25.10, 25.21 (1968) and cases therein cited. A recognized exception to these cases are those involving "personal deviations." As it applies to the facts before us we believe Edwards v. Industrial Commission, supra, must be considered an example of personal deviation or recreation.

On the basis of the facts herein stated, we find that the decedent's death was an accident arising out of and in the course of his employment. We further find the evidence does not support the award of The Industrial Commission and the award is set aside.

KRUCKER, C. J., and HOWARD, J., concur.

NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120, subsec. E.