527 P.2d 1232

George E. POTTINGER, Petitioner,

v.

The INDUSTRIAL COMMISSION of
Arizona, Respondent,

Tucson Realty & Trust Co., Respond-
ent Employer,

Twin Cities Fire Insurance Co., Hartford
Insurance Group, Respond-
ent Carrier.

No. 1 CA–IC 1013.

Court of Appeals of Arizona,
Division 1,
Department C.

Nov. 19, 1974.

Review Denied Jan. 28, 1975.

Lawrence Ollason, Tucson, and Barbara L. Caldwell, Phoenix, for petitioner.

Edward F. Cummerford, Chief Counsel, William C. Wahl, Jr., Former Chief Counsel by Richard E. Taylor, The Industrial Commission of Arizona, Phoenix, for respondent.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, P. C., by Lawrence H. Lieberman, Phoenix, for respondent carrier.

## OPINION

WREN, Presiding Judge.

This is a review of an award of the Industrial Commission for a non-compensable claim. Petitioner (Pottinger) claims that burns received in the act of smoking arose out of and in the course of his employment by respondent employer (Tucson Realty & Trust Company) within the meaning and definition of the Arizona Workmen's Compensation Act. (A.R.S. § 23–1021). The Commission found the act of smoking to be a "personal" act which did not arise out of his employment. We agree and therefore affirm the award of no compensation.

The facts of this case are rather bizarre. At the time of the occurrences detailed herein, Pottinger was a salaried agency manager in Nogales, Arizona. On October 27, 1971, at the direction of the respondent employer, he attended a convention of the Arizona Association of Independent Insurance Agents at the San Marcos Hotel in Chandler, Arizona, where he had been instructed to set up a cocktail hospitality room for the purpose of promoting business. The employer paid the registration fee but none of his other expenses.

Acting as host, petitioner was present in the hospitality room from around 5 o'clock in the evening until approximately 4 o'clock the next morning. He then made a social stop on the way to his hotel room and consumed another alcoholic drink. Eventually he arrived at his room about 5 o'clock a. m., undeniably intoxicated. Inside the room he struck a match to light a cigarette; it dropped from his grasp and ignited his clothing, causing second and third degree burns on his hands, chest and shoulders.

This court has heretofore enunciated the requisite elements for finding that an employee was acting within the course of his employment. In Transamerica Ins. Co. v. Valley National Bank, 11 Ariz.App. 121, 125, 462 P.2d 814, 818 (1969), we said:

"The conduct of a servant or agent is within the scope of his employment if

'(a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; and (c) it is actuated, at least in part, by a purpose to serve the master.'"

The record reflects that petitioner's attendence at the convention itself was clearly within the kind of work he was employed to perform, actuated by a purpose to serve his employer. As an insurance salesman he was often required to participate in both professional and social functions. His presence in the hospitality room was required, and the stated objective of the employer was that he mix with other insurance men to discuss old accounts and hopefully generate new ones.

The general rule is stated in 1 A. Larson, Law of Workmen's Compensation § 25 (1972):

"Employees whose work entails travel away from the employer's premises are held in the majority of jurisdictions to be within the course of their employment continuously during the trip, except when a distinct departure on a personal errand is shown. Thus, injuries arising out of the necessity of sleeping in hotels or eating in restaurants away from home are usually held compensable."

Respondents urge, however, that petitioner had left his employment before the injury occurred; that he had removed himself from the ambit thereof when he departed from the hospitality room. Further, that although he was required to be present in thee hospitality room for the cocktail event, there was no requirement that he remain overnight at the hotel, and he did so as a matter of personal convenience, and at his own expense. Therefore, they assert, the injuries were the result of an incident which neither arose out of, nor which occurred while within, the "time and space" limits of his employment.

■ We agree that petitioner might successfully argue that the period of sleep prior to the homeward journey did not remove him from the scope of employment. Indeed, in Peterson v. Industrial Commis-

sion, 16 Ariz.App. 41, 490 P.2d 870 (1971), Division 2 of this court specifically held that "we believe a reasonable period of sleep is necessarily incidental to the work of a traveling employee required to take overnight lodging away from his home." 16 Ariz.App. at 44, 490 P.2d at 873. In that case, the employee, a traveling salesman, died of suffocation in his overnight accommodations when, after becoming intoxicated, his head was caught between two metal slats of headboard while sleeping. The court went on to hold that an accident has been said to occur in the course of employment if the employee is injured while he is doing what a man so employed may reasonably do within a time during which he is employed, and at a place where he may reasonably be during that time.

While we are not prone to agree with the result reached in Peterson, *supra,* we are not persuaded by respondent's contention that the rationale of Peterson, *supra,* as to overnight lodging and "course of employment" is inapplicable because the petitioner here assumed his own lodging expense. Required attendance at the cocktail function necessarily and prudently mandated that he obtain lodging at its conclusion. The employer obviously contemplated an overnight stay as incidental to that required duty regardless of who was to absorb the expense. We therefore affirm that the petitioner must be considered within the course of his employment on the *night in question.*

■ Turning next to the question of intoxication and its effect on employment we said in Peterson, *supra*:

"Our consideration of this question is guided by the Arizona Supreme Court which has held that the compensation act of this state does not make intoxication or careless or negligent acts a bar to compensation. A person must be drunk to such an extent that he can no longer follow his employment. Ortega v. Ed Horrell & Son, 89 Ariz. 370, 362 P. 2d 744 (1961); King v. Alabam's Freight Co., 38 Ariz. 205, 298 P. 634

(1931). The intoxication must have reached an extent to be tantamount to abandonment of employment. Simpkins v. State Banking Department, 45 Ariz. 186, 42 P.2d 47 (1935)." 16 Ariz.App. at 43, 490 P.2d at 872.

Pottinger's injuries might well have partially resulted from fatigue and intoxication brought on by long hours in the hospitality room. However, the employer well knew that liquor would be consumed, and indeed furnished it. In any event, the record does not disclose that intoxication reached the level where there was an abandonment of employment.

Can the burns received from cigarette smoking be held compensable as arising out of the course of employment? We have little in the way of legal precedent to guide us on this issue. Respondents urge that lighting the match was a personal deviation from employment and therefore analogous to Edwards v. Industrial Commission, 94 Ariz. 342, 385 P.2d 219 (1963). In that case, the deceased employee was required by his employer to stay overnight in Prescott, Arizona, where he drowned while swimming in the pool at the motel where he was staying. The Arizona Supreme Court, in finding the accident non-compensable, reasoned:

"The fact that an employee is away from the office does not affect his right to compensation, providing he is 'on the job' during the time he is away. Harris v. Industrial Commission, 72 Ariz. 197, 232 P.2d 846. But the injury itself must in some way occur in the course of employment. . . .

Simply stated, there must be a causal connection between one's employment and the accidental death or injury sustained before compensation can be made. The only connection between decedent's employment and his accident is that his assignment took him to Prescott and necessitated his finding overnight lodging there. More is required under the industrial compensation laws of this state as we have consistently interpreted them.

Recreational activity of the kind undertaken by the decedent cannot be said to be an incident to his work or in any way associated with it." 94 Ariz. at 343–344, 385 P.2d at 220.

Other jurisdictions are in conflict on the question as to whether injuries received as a result of smoking are compensable within the purview of the act. In New York, compensation was denied a night watchman (Pisko v. Mintz, 262 N.Y. 176, 186 N.E. 434), and a janitor (McKenna v. Atlas Contracting Equipment Corp., 275 App.Div. 876, 88 N.Y.S.2d 668) who set fire to themselves apparently by smoking in bed. However, in Wiseman v. Industrial Accident Commission, 46 Cal.2d 570, 297 P.2d 649 (1956), a contrary decision was reached where an employee died as a result of fire in a hotel room supplied by employer where the fire may have been started by careless smoking of a guest who was there for a possible immoral purpose. Smoking was there held not so remotely connected with his employment that it did not arise out of it.

Under a doctrine of "personal comfort" it is commonly held that employees who engage in reasonable acts which minister to their personal comforts remain within the course of employment, and that they may be compensated for resulting injuries which can be said to arise out of their employment. See generally 1 A. Larson, The Law of Workmen's Compensation § 21.00 et seq. (1972), and 7 Schneider's Workmen's Compensation § 1617 et seq. (Perm. ed. 1950).

After noting that the rule of personal comfort finds acceptance in Arizona, the Supreme Court noted by dictum in Pauley v. Industrial Commission, 109 Ariz. 298, 508 P.2d 1160 (1973),

"In Nicholson v. Industrial Commission, 76 Ariz. 105, 110, 259 P.2d 547, 550 (1953), we noted that lunching on the premises is generally recognized to be within the course of employment, and likewise we noted the many decisions to the effect that getting fresh air, smoking, resting, eating food and ice cream, quenching thirst, using a telephone, toilet or other facility, washing and gathering up working clothes, are treated as arising out of the employment." 109 Ariz. at 302, 508 P.2d at 1164 (emphasis added).

Clearly, though, the ambit of such dictum was restricted to accidents occurring on the premises of the employer. In Pauley, the rule was held inapplicable to a traveling carnival employee, who sustained an injury while crossing a ditch in a park adjacent to the lot on which the carnival was located, for the purpose of buying ice cream for her personal use. The court agreed that the result reached would have been different had it been established that the ditch was upon the employer's premises.

There must, however, be a causal connection between the employment and the injury. In Nicholson, supra, the employee was not injured by his lunch; the platform under which he was eating collapsed and killed him. In Sacks v. Industrial Commission, 13 Ariz.App. 83, 474 P.2d 442 (1970), this court excluded from the scope of compensable activities an injury which occurred while the employee was arising from a toilet provided by the employer on the premises. A careful review of that decision, however, reflects that the personal comfort doctrine was not discarded, and that it is not in conflict with the above quoted dictum in Pauley. It was there held that the "arising out of" language of A.R.S. § 23–1021(A) requires that there be a causal connection between the employment and the injury, and that the risk of disc herniation while rising from a toilet facility, after its normal use, was not a risk in any way peculiar to or increased by petitioner's employment.

The court in Sacks qualified Royall v. Industrial Commission, 12 Ariz.App. 145, 468 P.2d 596 (1970), vacated on other grounds in 106 Ariz. 346, 476 P.2d 156 (1970), wherein claimant, while on a paid coffee break in employer's cafeteria,

tripped over another person on her way to make a personal telephone call, as an externally caused injury which was in critical contrast to the self-contained degenerative condition of the applicant in *Sacks*. *Pauley* approved the language of *Royall* thusly:

" '[T]he source of injury was sufficiently associated with the employment as to constitute a risk to which claimant was subjected in the course of her employment, and to which she would not have been subjected had she not been so employed.' " 109 Ariz. at 302, 508 P.2d at 1164.

The difficulty of analogizing or qualifying the paucity of decisions in this precise area is compounded by the fact that *Sacks* relied heavily on certain legal principles set forth in McCampbell v. Benevolent & Protective Order of Elks, 71 Ariz. 244, 226 P.2d 147 (1950), and City of Phoenix v. Industrial Commission, 104 Ariz. 120, 449 P.2d 291 (1969). Both of these cases were disapproved on different grounds by the Supreme Court in *Pauley*.

It is true that more and more generous expansions of coverage appear in the cases; and it is also an axiom that the compensation act should be given a liberal construction with a view to effectuating the evident principle of placing the burden of death and injury upon industry. No absolute test as yet has been devised in the ever-changing world of industrial law to determine whether any particular incident arises out of and in the course of employment. Indeed we are in an area where there can be no categorical test, and the difficulty of the case at bar is enhanced by the absence of judicial precedent in this jurisdiction. Clearly much compensation law has grown up around factual rather than legal classifications. The problem lies in applying the requisite principles of law to the facts, especially when the accident is not due to a risk inherent in the nature of the employment but is merely incidental thereto. Each case must be decided on its individual facts, and within the framework of the legal definitions set forth above. But it is readily apparent that each of the Arizona decisions on the subject is threaded with the proposition that an accident arising out of personal comfort and convenience must still evolve from a risk peculiar to or increased by the employment. In *Sacks* the result obviously would have been different had a broken commode caused the injury.

Petitioner's burns were the direct result of a purely personal act; the risk from which, even though he were to be considered on the premises of his employer, was no way inherent in or increased by his employment within the rationale of *Sacks*.

The injuries occurred as a result of the petitioner lighting a cigarette in his own hotel room at 5 o'clock a. m. while in an intoxicated condition. This act of smoking, even though construed as one of personal comfort, was completely disassociated from his employment; an act as could occur anywhere and in any place that the employee happened to live. Although the accident can be considered "in the course of" employment, the injuries sustained did not "arise out of" it within the purview of A.R.S. § 23–1021.

To approve recovery here would be to open the floodgates of personal activity, and metamorphose the character and intent of the Workmen's Compensation Act to that of general health and accident insurance. Such a generous interpretation has been proscribed by our Supreme Court in *Nicholson*.

The award is affirmed.

FROEB, J., concurs.

NELSON, Judge (dissenting).

My brother has very carefully and accurately outlined both the facts of this case and the principles of law applicable thereto and they need not be extensively repeated here. Because of my view that the accident not only occurred within the course of

petitioner's employment but also arose out of it, I must dissent.

The award of the Industrial Commission should be set aside for two reasons: First, and most decisive of the cause, the second sentence of the majority opinion highlights the misplaced emphasis on the cause of petitioner's accident: "Petitioner (Pottinger) claims *that burns received in the act of smoking . . .*" (emphasis supplied). Petitioner was injured because he was so intoxicated that he couldn't successfully complete a task he had probably accomplished thousands of times before without incident—the striking of a match. I fail to see how this set of circumstances significantly differs from the facts of Peterson v. Industrial Commission, *supra*. In that case, the deceased was so intoxicated that he couldn't successfully sleep without becoming entangled in the bed and suffocating. The primary cause of petitioner's injury was his state of intoxication. Since my brothers have held that he was within the course of his employment when the accident took place, Peterson, *supra,* requires that the award of the Industrial Commission be set aside.

Similarly, Sacks v. Industrial Commission, *supra,* is distinguishable on the ground that nothing in that case arose out of the applicant's employment to impair his ability to make normal use of the toilet. In the case at bar, Pottinger was intoxicated as a direct result of his employment and therefore unable to light his cigarette with the caution which normally accompanies that act.

Even without the issue of intoxication, which I believe to be controlling here, I would set aside the award on the smoking question. I support the view of the California decision cited above, Wiseman v. Industrial Commission, *supra*. Generally, that case and others regard smoking essentially as a matter of personal comfort which must be tolerated by an employer. Our Supreme Court has opened the door to application of the personal comfort doctrine in Arizona in Pauley v. Industrial Commission, *supra*. However, the majority herein distinguishes the *Pauley* case from the case at bar on the ground that Pottinger's accident did not occur on his employer's premises. I submit that this is a distinction without substance which frustrates the policy underlying the personal comfort doctrine where, as here, the employee was required to be on certain premises for the benefit of his employer.

If I could intellectually do so, I would be happy to join my brothers in adding to the ever-growing list of: "Are there any other reasons to stop smoking?" Unfortunately, I think the problem of smoking, like that of drinking, is one industry must be prepared to live with and compensate for in the event of injury while in the course of employment.