544 P.2d 710

Bert D. ZAMBONINI, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona, Respondent,

Arizona Department of Public Safety, Respondent Employer,

State Compensation Fund, Respondent Carrier.

No. 1 CA–IC 1250.

Court of Appeals of Arizona, Division 1, Department C.

Jan. 8, 1976.

Rehearing Denied Feb. 13, 1976.

Review Denied March 9, 1976.

Spencer K. Johnston, Phoenix, for petitioner.

Greg L. Folger, Chief Counsel, Industrial Commission of Arizona, Phoenix, for respondent.

Robert K. Park, Chief Counsel, State Compensation Fund by Don F. Schaar, Phoenix, for respondents employer and carrier.

## OPINION

NELSON, Presiding Judge.

We are called upon to determine two basic questions on review. The first question revolves around the sufficiency of the medical evidence to support the Industrial Commission award finding a non-compensable injury. The second question deals with whether the petitioner was within the course and scope of his employment when the injury occurred and whether the resultant injury arose out of his employment.

On February 23, 1973, while attending a conference in Show Low and Pinetop, Arizona, petitioner Bert Zambonini (Zambonini), an employee of the Arizona Department of Public Safety, suffered anginal pain during the evening hours shortly after having consumed a heavy meal. It was subsequently determined that petitioner sustained a myocardial infarction on either February 25th or February 26th.

The conference attended by Zambonini involved several high-ranking authorities of the department. The crux of petitioner's contention is that the stresses and strain of his employment, including the immediate pressure of attending the conference, the altitude in the Show Low area, and the fact that he was required by the circumstances to partake of a heavy meal, contributed to the heart attack. The petitioner urges that these facts establish that he sustained an injury arising out of and in the course of his employment on that date.

Petitioner's and respondent's briefs, as well as the record in this case, deal exhaustively with the petitioner's work history. The crucial aspect of petitioner's previous employment experience is that the bulk of petitioner's jobs had involved non-road work. When the petitioner was appointed District Commander, his lack of "road" experience and "command responsibilities" caused feelings of concern about the performance of his duties. The large geographic area to which petitioner was

assigned, its relative isolation, and removal from supervision combined to make this a difficult assignment. During this time petitioner had various disagreements with his supervisors regarding the handling of certain personnel matters, the murder of two of his men, and other such problems. Petitioner had a policy of responding to all major accidents in the area—without regard to day or hour. Petitioner's ratings, sometimes unsatisfactory, were another source of anxiety. At the time of the February 23, 1973 incident, petitioner was expecting an evaluation.

The actual meeting or conference of February 23, 1973 broke up around 4:30 p. m. At the hearing petitioner described the activities following the meeting in this fashion: "After it broke up, it is the policy of the organization that, you know, everyone that possibly can stay over and more or less socialize ·and discuss your problems and what have you on a relaxed basis." Petitioner further testified. that "the superintendent more or less, you know, liked it to be this way." This post conference get-together was characterized as a part of the entire day's activities. At a restaurant in Pinetop, petitioner joined the others in ordering a large, expensive meal. Later the group met at the Hanging Tree, a bar. The evening finished with a poker game. Sometime after the meal petitioner experienced pains that he thought were "indigestion". The pains continued, causing an inability to sleep. In the early morning hours of February 24, 1973, petitioner was admitted to a hospital at Show Low. Three or four days later he was flown to St. Luke's in Phoenix.

Petitioner asserts that the award of the Commission was not reasonably supported by the evidence. In so doing petitioner relies on the testimony of the doctors who stated that the tension and stress of the employment situation could contribute to the myocardial infarction. The hearing officer found a conflict in the medical testimony and resolved it in favor of the doctors who found no employment contribution to the myocardial infarction.

■ It is a well-established principle that the hearing officer is to resolve all conflicts in the medical evidence. *State Compensation Fund v. Keefe,* 22 Ariz.App. 311, 526 P.2d 1266 (1974); *Brewer v. Industrial Commission of Arizona,* 9 Ariz. App. 319, 451 P.2d 897 (1969). Such resolutions will not be disturbed on appeal if there is reasonable evidence to support them. *Micucci v. Industrial Commission of Arizona,* 108 Ariz. 194, 494 P.2d 1324 (1972).

In his brief petitioner quotes extensively from the record to support his theory of a stress-induced myocardial infarction. We see no need to repeat any of the extensive testimony given, the thrust of it being that: (1) petitioner's employment caused or did not cause stress; (2) the stress contributed to or did not contribute to petitioner's myocardial infarction. Highly qualified practitioners and specialists testified in support of both positions. Complete hypothetical questions were presented containing facts that illustrated Zambonini's employment situation in order to obtain opinions as to stress and its relation to heart disease in this case. The resolution of the conflicting testimony was clearly a matter for the hearing officer.

Petitioners further argue that the statements of Doctors Cohen, Robinson and Zell constitute an insufficient basis upon which to make the award. Since Dr. Cohen stated that the cause of the myocardial infarction is unknown, the petitioner argues that his testimony is substantially weakened. It is further contended that his medical opinions do not have any substantial reasonable basis. Similarly petitioners argue that since Dr. Robinson could not answer how the stresses and strains of the petitioner's work affected him, he could not testify as to whether or not there is a causal relation between the employment and the myocardial infarction. Petitioner also urges that his testimony would not be

reasonable evidence to support the award. The testimony of Dr. Zell is attacked on the basis that his examination of Zambonini was done sometime after the myocardial infarction and that he could not testify as to what petitioner's condition was prior to the alleged industrial accident. As with the other doctors, petitioner argues that he could not give reasonable evidence as to whether there was causal relationship between the employment activities and the industrial accident.

■ The respondents answer the attack on the testimony of Doctors Cohen, Robinson and Zell by reference to the cases of *Goldstein v. Industrial Commission of Arizona,* 22 Ariz.App. 319, 526 P.2d 1274 (1974); *Jones v. Industrial Commission,* 9 Ariz.App. 543, 454 P.2d 591 (1969); *Raftery v. Industrial Commission of Arizona,* 15 Ariz.App. 93, 486 P.2d 205 (1971), and *Kinsman v. Industrial Commission of Arizona,* 6 Ariz.App. 609, 435 P.2d 52 (1968). We agree that these cases provide authority for the proposition that the testimony offered here is sufficient to create a medical conflict and sufficient to support an award denying compensation. In *Goldstein,* supra, we noted that where one expert testifies that because of facts A and B, fact C exists, and the other testifies that the existence of fact C is incapable of being determined from the existence of facts A and B, a conflict in expert testimony occurs.

To answer the second question presented, we must determine whether the hearing officer's finding that the alleged injury did not occur within the course and scope of his employment and did not arise out of his employment is reasonably supported by the evidence. While the testimony of the doctors was in conflict as to the role that stress played in the myocardial infarction, there is medical testimony that the ingestion of a huge meal could be a contributing cause.

■■ In order for an injury to be compensable, it must "arise out of" the employment and be sustained "in the course of" the employment. *Royall v. Industrial Commission of Arizona,* 106 Ariz. 346, 476 P.2d 156 (1970). The term "arising out of" is said to refer to the origin or cause of the injury, while "in the course of" refers to the time, place and circumstances of the accident in relation to the employment. The hearing officer specifically found that Zambonini failed to prove that he sustained an injury by accident arising out and in the course of his employment.

■ The arguments raised by Zambonini urging that he was in the course and scope of his employment when the injury occurred are persuasive. Dinner was described "as part of the entire day's activities". The dinner in question is not unlike the event in *Lawrence v. Industrial Commission of Arizona,* 78 Ariz. 401, 281 P.2d 113 (1955). There an employee-incentive luncheon was characterized as a mixed business and social event. Respondent State Compensation Fund's arguments negating the idea that Zambonini was performing a duty in attending the conference and emphasizing the question of who paid for the meal are unimpressive in light of *Lawrence,* supra. There the Court recognized that the realities of business make for subtle encouragement, whether it take the form of compulsion or incentive. Similarly the Court stated that the activities of the employee under the direction of the employer determine the course of employment, not the method in which expenses are paid.

While we may believe that the accident occurred within the course and scope of petitioner's employment, this alone is insufficient. The second prong of the test must be met. We do not find petitioner's reference to *Peterson v. Industrial Commission of Arizona,* 16 Ariz.App. 41, 490 P.2d 870 (1971) persuasive. Zambonini's case and the *Peterson* case can be distinguished on the basis that *Peterson* involved an outside force, and the instant case involved personal choice—something within the control of the petitioner.

■ An injury which occurs in the course of employment will *ordinarily, but not necessarily,* arise out of it. *Royall v. Industrial Commission of Arizona,* supra. In *Royall,* the Court recognized that the cases fall within a wide range of factual situations—ones where the causation is clearly work-connected, others where the facts are weaker. The Court further noted that each analysis should be done on a case-by-case basis.

■ We believe that the facts of this particular case do not warrant a finding that the injury in question arose out of petitioner's employment. We find that the over-eating done by Zambonini, assuming that it was a contributing cause to his heart attack, was not a risk inherent in the employment.

The analysis of the Court in *Herman v. Greenpoint Barrel and Drum Reconditioning Company,* 8 N.Y.2d 880, 203 N.Y.S.2d 922, 168 N.E.2d 721 (1960) is cogent. There an award of compensation for an employee who died of acute alcoholism was reversed when it was found that the alleged risk had no relation to the employment. The employer had given a holiday party on his premises and furnished quantities of intoxicating liquor and food. A drinking contest evolved. It was determined by the Court that the risk of injury from over-drinking was created solely by the voluntary conduct of the employee.

Applying the reasoning of *Herman* to the facts of this case, we find that the risk to which Zambonini was exposed (overeating) was not one inherent in his employment; the risk was one that arose out of his *voluntary* actions. While it is possible that the petitioner's employment may have provided the setting for the advent and maturation of the diseased heart, we agree with the respondent's contention that this is clearly not sufficient to require a finding of causal connection. *Kinsman v. Industrial Commission of Arizona,* supra. As in *Pottinger v. Industrial Commission of Arizona,* 22 Ariz.App. 389, 527 P.2d

1232 (1974), we find the Zambonini's injury was the result of a purely personal act. See also: *Klein v. Terra Chemicals International Inc.,* 14 Md.App. 172, 286 A.2d 568 (1972) ; *Bartlett v. Duke University,* 284 N.C. 230, 200 S.E.2d 193 (1973).

The award of the Industrial Commission is affirmed.

WREN and SCHROEDER, JJ., concur.